**PLEASANT MANAGEMENT, LLC**

v.

**Maria CARRASCO et al.**

No. 2004–307–A.

Supreme Court of Rhode Island.

March 30, 2007.

See also 870 A.2d 443.

Steven G. Wright, Esq., for Plaintiff.

John B. Lawlor, Jr., Esq., for Defendant.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

Two years ago, in this case, we had occasion to rebuke the plaintiff's attorney

for improper conduct in violation of Article V of the Supreme Court Rules of Professional Conduct.[1] *Pleasant Management, LLC v. Carrasco,* 870 A.2d 443 (R.I.2005) (*Pleasant Management I*). In an equally regrettable postscript, we now affirm a monetary sanction imposed against the defendants' former counsel under Rule 11 of the Superior Court Rules of Civil Procedure.

### Facts and Procedural History

Lidia M. Sanchez, former counsel for defendants Maria Carrasco and Jose Ortega, appeals from an order of a Superior Court magistrate imposing a $2,000 sanction against her for conduct in violation of Rule 11. The magistrate determined that Ms. Sanchez had filed a pleading accusing Steven A. Murray, attorney for plaintiff Pleasant Management, LLC, of fraudulent conduct "without proper judgment and necessary regard for the truth or falsity of the statement she was making." Because the order at issue emanates from the same foreclosure action discussed in *Pleasant Management I,* we briefly review the facts with such elaboration as is necessary to place the Rule 11 proceedings in context.

The plaintiff purchased property owned by defendants at a tax sale conducted by the Narragansett Bay Water Quality Management District, after which it filed a petition to foreclose defendants' right of redemption.[2] On March 19, 2002, the parties agreed to a stipulation and order allowing defendants to redeem the property from plaintiff for $5,300, to be paid in

---

[1]. The Supreme Court Rules of Professional Conduct recently have been revised, effective April 15, 2007, by order of this Court dated February 16, 2007.

[2]. The defendants objected to plaintiff's petition to foreclose the right of redemption, asserting that:

"they did not receive notice of the tax sale, more specifically, [notice] for back due sewer assessments. The parties did not receive notice of the tax sale from the City of Providence, nor from the attorney of petitioner. Therefore, the respondents allege that the lien filed in the recorder of deeds on the said real estate is invalid."

monthly installments of $200. If defendants missed any payment, however, plaintiff was permitted to file for an entry of default foreclosing defendants' right of redemption.

In March 2003, plaintiff sought to enter a default judgment against defendants after two installment checks failed to clear for lack of sufficient funds. Before the hearing, Ms. Carrasco personally contacted Mr. Murray, plaintiff's counsel, by telephone and asked him to redeposit the two checks that the bank had dishonored. Attorney Murray agreed to do so.[3] Believing that the matter had been resolved, neither defendants nor Ms. Sanchez appeared at the April 10, 2003 hearing, and a default decree subsequently was entered against them, foreclosing defendants' right of redemption. On May 8, 2003, defendants filed a motion to vacate the default judgment, alleging that they did not attend the hearing because they had relied on Ms. Carrasco's telephone conversation with Mr. Murray. The motion to vacate was denied and defendants appealed.

While the appeal in *Pleasant Management I* was pending, this Court remanded the case to Superior Court for plaintiff to pursue a motion seeking Rule 11 sanctions against Ms. Sanchez. The plaintiff initially had requested sanctions against Ms. Sanchez in a pleading objecting to defendants' motion to vacate, but the motion justice refused to address the issue of sanctions at that time. On June 30, 2004, more than a year after the issue first was raised, plaintiff filed a motion for sanctions against Ms. Sanchez in Superior Court.

The basis for plaintiff's request for sanctions originated from allegations contained in defendants' motion to vacate. Specifically, plaintiff took issue with Ms. Sanchez's assertion that:

"Plaintiff's attorney claims that he deposited the checks and that they were not paid because there was not sufficient funds to cover the checks for February and March. However, on the face of the checks there is a written notation made NSF, which was not made by the Bank but was in fact made by the Plaintiff's attorney.

" * * *

"Defendants claim that the order to enter judgment was entered by plaintiff's attorney by fraud and without any basis."

In its motion for sanctions, plaintiff averred that Ms. Sanchez failed to provide any evidence to support her contention that Mr. Murray had committed fraud by writing "NSF"[4] on the check he received from defendants. The plaintiff cited the testimony of Linda Kelly, a Citizens Bank branch manager, who testified at the June 3, 2003 hearing on defendant's motion to vacate.[5] At that hearing, Ms. Kelly said that she wrote "NSF" on one of the checks because there was not money available in the account to cover it. She further testified that she recognized the handwriting of another bank employee who had written a second "NSF" that appeared on the check.

A Superior Court magistrate heard plaintiff's motion for sanctions on July 22 and July 29, 2004. At the July 22 hearing, the magistrate sought an explanation from Ms. Sanchez about why she had alleged

---

**3.** In *Pleasant Management, L.L.C. v. Carrasco*, 870 A.2d 443, 446 (R.I.2005), we held that this conversation violated the anti-contact rule set forth in Article V, Rule 4.2 of the Supreme Court Rules of Professional Conduct.

**4.** It would appear that "NSF" stands for "not sufficient funds."

**5.** The initial hearing on defendant's motion to vacate was held on May 14, 2003. After hearing arguments of counsel, the motion justice continued the matter to June 3, 2003.

that it was plaintiff's attorney who had written "NSF" on defendants' check. The following colloquy took place between the court and Ms. Sanchez:

"THE COURT: * * * On what basis did you make allegations concerning Mr. Murray's actions writing N.S.F. on the check after being told, by the way, beforehand that the bank officials were going to testify? Tell me the basis of your allegations.

"MS. SANCHEZ: Well, when I filed the motion to vacate the judgment, my interpretation is that you get a check, you deposit it in the bank, and the bank stamps the checks and says there is no funds with a stamp that says N.S.F. These are handwritten notes, N.S.F. And I've spoken to people from different banks, one from Bank Rhode Island and they said that this [is] not appropriate, one from Citizen's Bank, where my client had the account.

" * * *

"THE COURT: What is the basis upon which you made an allegation that he put N.S.F. on the checks?

"MS. SANCHEZ: Because we didn't have any indication from the bank that the bank had written these initials. It is not appropriate.

"THE COURT: You didn't have any indication prior to the hearing and you didn't have any indication that he did or did not. You just recklessly made that statement. Is that correct?

"MS. SANCHEZ: No, it was not recklessly. The check was not deposited, your Honor. He went to the bank and requested does this account have funds and the bank officials on their own wrote N.S.F. That is not appropriate. I

have spoken to bank officials and they said that is not appropriate.

"THE COURT: So, therefore, you jumped to the conclusion that he wrote N.S.F. on the check.

"MS. SANCHEZ: Yes, I did."

Throughout the hearings, however, Ms. Sanchez maintained that she "had plenty of basis from the beginning" to support her allegation of fraud. She also argued that plaintiff's motion was untimely because thirteen months had passed since the time plaintiff initially raised the issue of sanctions.

■ After reviewing the evidence before him, the magistrate concluded that Ms. Sanchez "for all inten[ts] and purposes alleged fraud, alleged tampering with an instrument by a member of the bar without any basis in fact and put all of the parties through the so-called ringer without any basis." The magistrate continued: "I understand that it's a defendant's duty to advance all argument[s] zealously but the defendant's duty to argue zealously also requires that those arguments be made in good faith without factual misrepresentations and after proper consideration." Disputing Ms. Sanchez's contention that the motion for sanctions was untimely made, the magistrate imposed a $2,000 sanction against Ms. Sanchez. Ms. Sanchez filed her notice of appeal on August 12, 2004, although the magistrate did not formally enter his decision until September 29, 2004.[6]

### Standard of Review

■ Trial courts have broad authority under Rule 11 "to impose sanctions against attorneys for advancing claims without proper foundation[.]" *Michalopoulos v. C*

---

**6.** It is well settled that this Court will treat a premature filing of a notice of appeal as timely. *United Lending Corp. v. City of Providence,* 827 A.2d 626, 631 n. 9 (R.I.2003) (citing *Russell v. Kalian,* 414 A.2d 462, 464 (R.I.1980)).

& D Restaurant, Inc., 847 A.2d 294, 300 (R.I.2004). Rule 11 provides, in part, that:

"Every pleading, written motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record * * *. * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, any appropriate sanction * * *."

■ Under Rule 11, a trial justice has discretionary authority to formulate what he or she considers to be an appropriate sanction, but must do so in accordance with the articulated purpose of the rule: "to deter repetition of the harm, and to remedy the harm caused." *Michalopoulos*, 847 A.2d at 300 (quoting *Lett v. Providence Journal Co.*, 798 A.2d 355, 368 (R.I. 2002)). As such, this Court will not reverse a trial justice's imposition of sanctions for a litigant's misconduct unless "the trial court 'based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Id.* (quoting *Lett*, 798 A.2d at 367). Therefore, we will reverse an imposed sanction only if

the trial justice has abused his discretion in imposing that sanction. *Id.*

## Discussion

Ms. Sanchez advances three arguments on appeal to support her contention that the Superior Court's imposition of Rule 11 sanctions was improper. She first alleges that plaintiff's Rule 11 motion was untimely because plaintiff waited more than a year to renew its request for sanctions. Additionally, she contends that her motion to vacate, notwithstanding the allegation of fraud it contained, was "substantially justified when read in its entirety." Finally, Ms. Sanchez asserts that Rule 11 sanctions, sought by plaintiff "to remedy a supposed hurt to [a]ttorney Murray's reputation[,]" cannot be used as a substitute for tort damages.

■ Turning first to Ms. Sanchez's argument about the timeliness of plaintiff's motion for sanctions, we are of the opinion that the hearing magistrate did not abuse his discretion in finding plaintiff's motion for sanctions was timely made. The language of Rule 11 derives from the 1983 amendment to Rule 11 of the Federal Rules of Civil Procedure[7] and is "similar * * *, though not identical, to that of its federal counterpart." *Lett*, 798 A.2d at 365. Although neither the state rule nor the federal rule make any mention concerning the timing of filing motions for sanctions, the Advisory Committee Notes to the 1983 Federal Rule state: "A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so." Fed.R.Civ.P. 11 (1991). Moreover, federal cases on the issue indicate that a motion for sanctions must be filed "as soon as

---

**7.** Rule 11 of the Federal Rules of Civil Procedure was substantially revised in 1993, but Rhode Island's Rule 11 is based upon the 1983 federal model. *See* Committee Notes, Super. R. Civ. P. 11.

practicable after discovery of a Rule 11 violation" and in any event within a "reasonable amount of time." *Kaplan v. Zenner,* 956 F.2d 149, 151–52 (7th Cir.1992); *accord General Motors Acceptance Corp. v. Bates,* 954 F.2d 1081, 1086 (5th Cir. 1992); *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 99 (3rd Cir.1988).

After reviewing the record, the magistrate determined that a request for sanctions was, in fact, filed on May 12, 2003, when plaintiff objected to defendants' motion to vacate. Although this pleading was not solely a motion for sanctions, it included a request that the court impose sanctions on Ms. Sanchez "for failure to make adequate investigation of the motion she prepared and signed." Additionally, plaintiff attempted to raise the issue of sanctions at the June 3, 2003 hearing on the motion to vacate, but the motion justice deferred the matter, indicating that plaintiff could reschedule the motion at a later time. Although it would have been preferable if plaintiff had pursued its request for sanctions more expeditiously, we do not perceive an abuse of discretion in the magistrate's finding that the motion was timely filed. Moreover, Ms. Sanchez does not assert that she was in any way prejudiced by plaintiff's delay in pursuing these sanctions. Accordingly, we proceed to address the merits of the magistrate's decision to impose sanctions.

■■ To comply with the requirements of Rule 11, counsel must "make [a] reasonable inquiry to assure that all pleadings, motions and papers filed with the court are factually well-grounded, legally tenable and not interposed for any improper purpose." *Mariani v. Doctors Associates, Inc.,* 983 F.2d 5, 7 (1st Cir.1993) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). Before it was amended in 1995, Superior Court Rule 11 did not require an attorney to conduct a reasonable investigation before certifying that his or her pleading was well-grounded in fact and law. *See* Super. R. Civ. P. 11 (1994). Rather, former Rule 11 stated, in part, that "[t]he signature of an attorney constitutes a certificate by the attorney that he or she has read the pleading; that to the best of his or her knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." *Id.* Based on this language, courts employed a subjective standard to determine whether an attorney violated the pleading process. *See Forte Brothers, Inc. v. Ronald M. Ash & Associates, Inc.,* 612 A.2d 717, 724 (R.I. 1992); *see also Kale v. Combined Insurance Company of America,* 861 F.2d 746, 756–57 (1st Cir.1988); *Hashemi v. Campaigner Publications, Inc.,* 784 F.2d 1581, 1583 (11th Cir.1986). The current language of Rule 11, however, closely follows the 1983 amendment to Federal Rule 11, which "did away with the old standard of subjective good faith on the part of the attorney * * *, and replaced it with an objective one of 'reasonableness under the circumstances.'" *Kale,* 861 F.2d at 757.

Attorney Sanchez avows that she reasonably investigated the allegations contained within the motion to vacate. Although she later acknowledged that Mr. Murray was not the person who wrote "NSF" on the check, she contends that her inquiry at the time she signed the pleading indicated otherwise. In particular, Ms. Sanchez averred that she spoke with the branch manager at the Citizens Bank where her clients held their account and was told that it was "not appropriate" for an employee to handwrite "NSF" on a check. That information, she asserts, "permitted the inference that Mr. Murray himself signed 'NSF' on the check."

The hearing magistrate, however, examined the evidence and found that Ms. San-

chez failed to properly investigate the allegations of fraud:

> "Ms. Sanchez filed this pleading accusing Mr. Murray of improper and I might add illegal acts without proper judgment and necessary regard for the truth or falsity of the statement she was making. She could have jumped to the conclusion that the NSF was not something her client placed on the check and let it stand at that. To jump to the illogical conclusion that not only was it done by somebody else but had to be done by Mr. Murray was a giant leap that was unnecessary. To not further investigate despite being advised of certain facts concerning the process followed in this matter is the very purpose for which Rule 11 exists and is imposed."

Based on our own review of the record, we are satisfied that the magistrate did not abuse his discretion by imposing sanctions on Ms. Sanchez. As we previously have stated, although counsel has "a duty on behalf of his client to advance all arguments zealously, he also [has] a duty to advance those arguments in good faith, without factual misrepresentations, and after proper consideration." *Michalopoulos,* 847 A.2d at 302. Clearly the magistrate determined that Ms. Sanchez did not sufficiently investigate the appearance of "NSF" on defendants' checks before attributing fraud to Mr. Murray in her pleading. The word "fraud" has a specific and especially pernicious meaning in a juristic vocabulary.[8] We discern no grounds to disturb the magistrate's findings that Ms. Sanchez jumped to a hasty and incorrect conclusion, without any basis in fact, that Mr. Murray committed an act of fraud by writing "NSF" on the checks.

Finally, Ms. Sanchez's contention that Rule 11 sanctions may not be used as a substitute for tort damages is of no relevance because the magistrate clearly imposed sanctions as a remedy for Ms. Sanchez's "overzealous reckless advocacy" and not as compensation for any alleged harm to Mr. Murray's reputation. As the magistrate articulated, "the purpose of Rule 11 sanctions, and that is all I am dealing with here today, is not to compensate because I believe that there are other avenues that one can follow * * * to seek compensation for either maliciousness, for libel, and slander if some statements were made in connection with this matter that were malic[ious]." We are satisfied that the $2,000 payment that the magistrate ordered falls well within the "considerable latitude" that the court is afforded in imposing Rule 11 sanctions. *See Michalopoulos,* 847 A.2d at 302.

### Conclusion

Because the magistrate did not err in his determination that Ms. Sanchez failed to investigate sufficiently the facts underlying the allegation of fraud in the defendants' motion to vacate, we affirm the order imposing sanctions and remand the papers to the Superior Court.

---

**8.** The word "fraud" is defined in Black's Law Dictionary 685 (8th ed.2004) as: "A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment. Fraud is usu[ally] a tort, but in some cases (esp[ecially] when the conduct is willful) it may be a crime."