Justice ROBINSON,
concurring in part and dissenting in part.
I am pleased to be able to concur in the Court’s opinion to the extent that it vacates the very substantial monetary sanction which the trial court imposed on White & Kelly, P.C.[1] However, I respectfully but most vigorously dissent from the Court’s ruling that any monetary sanction (regardless of the amount) was appropriately levied against Doctor Peter J. Bellaf-iore. It is my very definite view that neither Dr. Bellafíore nor his attorneys engaged in any sanctionable conduct in this case.
I am well aware of the stresses and strains that are inherent in all litigation, and I am equally aware of how the occurrence of unanticipated testimony or other unexpected evidence can necessitate major adjustments in trial strategy and tactics in mid-stream; and I am not a naif who refuses to believe that sharp practices sometimes take place during discovery or in the courtroom, but this is no such case. After carefully scrutinizing the record, I simply do not see therein conduct of a sanctionable nature on the part of Dr. Bellafíore; I fail to see in the record the presence of anything more than “the fog of war” that so often envelops litigation— especially in the midst of a high-stakes jury trial.
I
I acknowledge that this Court must abide by an abuse of discretion standard of review in the instant case and must determine whether or not the sanction at issue was imposed based on a clearly erroneous assessment of the evidence. Pleasant Management, LLC v. Carrasco, 918 A.2d 213, 217 (R.I.2007). However, what the majority fails to take into consideration in conducting its review is the fact that the discretion of which we speak “is not exercised by merely granting or denying a party’s request;” rather, “[t]he term ‘discretion’ imports action taken in the light of reason as applied to all the facts and with a view to the rights of all the parties to the action while having regard for what is right and equitable under the circumstances and the law.” Hartman v. Carter, 121 R.I. 1, 5, 393 A.2d 1102, 1105 (1978); see also Dauray v. Mee, 109 A.3d 832, 846 *523 (R.I.2015); State v. Lead Industries Association, Inc., 69 A.3d 1304, 1312 (R.I.2013).
I am profoundly disturbed by the fact that, of the five alleged inconsistencies between Dr. Bellafiore’s discovery disclosures and his trial testimony on which the trial justice’s sanction decision is based, two are clearly in error. My concern is deepened by the fact that it is readily apparent from a reading of the deposition testimony and answers to interrogatories at issue that the trial justice was simply not correct with respect to those two bases — i.e., whether or not Dr. Bellafiore stated during discovery that Mr. Manning apologized and whether or not conversations with Mr. Manning about sedation on March 5 or March 6 had been referenced by Dr. Bellafiore during discovery.[2]
Moreover, a detailed reading of the deposition testimony shows that a third basis relied upon by the trial justice as a predicate for the sanction, while not incorrect, is not in fact as clear an inconsistency as the trial justice implies. The trial justice stated that “[t]he drug, Versed, was never identified earlier.” He is correct that Dr. Bellafiore never used the word “Versed” at his deposition or in his answers to interrogatories. However, the following colloquy took place at Dr. Bellafiore’s deposition:
“Q. Do you know now what options they have for sedation at the closed machine [at Rhode Island Hospital]?
“A. I would assume it’s the same options that we have at our hospital.
“Q. What are those options?
“A. There are a variety of things you can do including Ativan or other benzodiazepines * * (Emphasis added.)
In what is a marked characteristic of the deposition, no follow-up question was asked relative to Dr. Bellafiore’s reference to “other benzodiazepines.” A brief look at the Physicians’ Desk Reference shows that Versed is a benzodiazepine.[3] Therefore, although Dr. Bellafiore did not use the word ‘Versed,” he clearly stated at his deposition that, in addition to Ativan, drugs which fall into the class of benzo-diazepines, as Versed does, could be used to sedate a patient for a closed MRI.
In addition to the errors committed by the trial justice concerning what he deemed to be multiple bases for imposing sanctions, his decision contains other errors. As the majority recognizes, there are numerous computational errors in the trial justice’s calculation of the amount to be awarded as a sanction, as well as inconsistencies between what was “award[ed]” and what was ultimately included in the sanctions amount. And there is more; in addition to these factual errors, the trial justice plainly applied the wrong rule. The text of Rule 11 of the Superior Court Rules of Civil Procedure and our decision in D'Amario v. State, 686 A.2d 82, 85 (R.I.1996), are very clear: Rule 11 is not applicable to an alleged failure to provide *524 complete answers to interrogatories and deposition questions.
Moreover, my review of the record has uncovered the following additional errors. The trial justice stated in his -written decision that plaintiffs’ counsel “sought prompt relief’ after Dr. Bellafiore’s purported “surprise testimony” at trial; however, in reality it took plaintiffs’ counsel over a week to move for entry of default. The trial justice also stated in his decision that “Dr. Bellafiore’s interrogatory answers describe no refusal of treatment,” whereas the supplemental answer to Interrogatory No. 16 stated:
“Defendant asserts that Mr. Manning refused to be sedated to undergo a ‘closed’ MRI, when the ‘open’ MRI at Rhode Island Hospital was inoperable, despite being repeatedly informed that he might have a life threatening condition, which might be detectable by MRI.”
Additionally, the trial justice stated in his decision that “there is no reference [in Dr. Bellafiore’s interrogatory answers] to conversations with Mr. Manning or Mrs. Manning,” whereas the answer to Interrogatory No. 18 stated: “I spoke with the patient and his wife during his admission regarding his treatment.” In like manner, the trial justice’s decision contained the following statement: “To reveal or even suggest, so late in the case [ (ie., at trial) ], that Mr. Manning was informed of risks and refused treatment, was simply astonishing.” Not only was that information contained in the above-quoted supplemental answer to Interrogatory No. 16, it was also contained in Dr. Bellafiore’s deposition testimony; when Dr. Bellafiore was asked at deposition if it was his testimony that Mr. Manning “refused to attempt [the closed MRI] after [he] told [Mr. Manning] that he had a life threatening condition * * *,” Dr. Bel-lafiore responded: “Absolutely.”
The numerous material errors contained in the trial justice’s written decision addressing the issue of sanctions certainly do not reflect that he exercised his discretion “in the light of reason as applied to all the facts;” it is my opinion that he could not have done so when he was under such a misapprehension with respect to what the facts actually were in the case before him. Hartman, 121 R.I. at 5, 393 A.2d at 1105. When a judge is considering the imposition of any sanction and perhaps especially one of the magnitude of the one at issue in this case — which I note is a very high sanction — he or she should be punctilious about conducting an accurate and meticulous review of the facts and applying with care the correct principles of law. I am unable to say that the trial justice acted in that manner in this case; and, therefore, it is my opinion that the trial justice in this case abused his discretion when he imposed sanctions on Dr. Bellafiore based to a substantial extent on a clearly erroneous assessment of the facts. See Pleasant Management, LLC, 918 A.2d at 217. The majority’s decision to the contrary is, quite frankly, astonishing to me.
II
My conclusion that the trial justice abused his discretion in the instant case is further buttressed by the fact that, after a thorough review of Dr. Bellafiore’s deposition, his entire trial testimony, the answers to interrogatories, and the supplemental answer to interrogatories, I am left with the inescapable conclusion that the trial justice’s decision that sanctions were appropriate was not a reasonable determination based on the circumstances present in this case.
The majority correctly reviews the trial justice’s decision based on his inherent power to sanction. Such a sanction allows a trial justice to exercise that inherent *525 power “to fashion an appropriate remedy that would serve the ends of justice.” Vincent v. Musone, 574 A.2d 1234, 1235 (R.I.1990). As the majority recognizes, the trial court may properly exercise its inherent power to impose a sanction on a party only upon a finding that the party (in this case, Dr. Bellafiore) “acted in bad faith, vexatiously, wantonly, or for oppressive reasons.” Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal quotation marks omitted); see Blue Cross & Blue Shield of Rhode Island v. Najarian, 911 A.2d 706, 711 n. 5 (R.I.2006). After a thorough and painstaking review of the record in its entirety, I am genuinely mystified as to how the majority could come to the determination that somehow Dr. Bellafiore’s conduct met that standard.
I begin by considering the standard itself. As I noted in my recent dissent in Long v. Dell, Inc., 93 A.3d 988, 1007 n. 1 (R.I.2014), “this Court has on numerous occasions, in past opinions, relied on dictionary definitions to provide the plain meaning of certain words.”[4] As such, in the instant case I deem it necessary to look to the dictionary definitions of bad faith, vexatious, wanton, and oppressive. Bad faith has been defined as “[djishonesty of belief, purpose, or motive,” Black’s Law Dictionary 166 (10th ed. 2014), and as “[t]he malicious intention to be dishonest or to violate the law, as in negotiations over a contract.” The American Heritage Dictionary of the English Language 133 (5th ed. 2011). Vexatious has been defined as “without reasonable or probable cause or excuse; harassing; annoying,” and vexation has been defined as “[t]he damage that results from trickery or malice.” Black’s Law Dictionary at 1796. In addition, wanton means “[Unreasonably or maliciously risking harm while being utterly indifferent to the consequences,” id. at 1815, and “[m]arked by unprovoked, gratuitous maliciousness; capricious and unjust[.]” The American Heritage Dictionary of the English Language at 1951. Oppressive is defined as “exercising power arbitrarily and often unjustly; tyrannical” and “[difficult to cope with; causing hardship or depressed spirits.” Id. at 1237. These definitions show that a sanction based on the court’s inherent power should be a reaction to conduct that could be characterized as malicious, dishonest, harassing, or unjust.
To determine whether Dr. Bellafiore’s conduct in this case rose to that very high standard, I look to what transpired during the discovery process. Although unquestionably Dr. Bellafiore’s answers to Interrogatories No. 7 and 18 were terse and incomplete (although they were not inaccurate), it is in my view highly significant that no motion to compel more responsive answers was filed with respect to those answers. Nor were Requests for Admission employed for the purpose of “pinning down” crucial facts. Moreover, no motion to compel a more responsive answer was filed after Dr. Bellafiore provided his supplemental answer to Interrogatory No. 16 which, crucially, stated; “Defendant asserts that Mr. Manning refused to be se *526 dated to undergo a ‘closed’ MRI, when the ‘open’ MRI at Rhode Island Hospital was inoperable * * I take no joy in serving as a Monday morning quarterback with respect to the conduct of litigation. Nevertheless, where very significant sanctions are at issue, as they are in the instant case, I feel obliged to state that this case would probably not be before us if plaintiffs’ counsel had been more meticulous in the course of the discovery process.
When I turn to Dr. Bellafiore’s deposition, the lack of meticulousness on the part of plaintiffs’ counsel is even more readily apparent. The plaintiffs’ counsel, in posing questions at the deposition, repeatedly used simply the word “sedation” or “anesthesia” without specifying what level of sedation the question was referencing. For example, Dr. Bellafiore was asked for “any reason why [Mr.] Manning couldn’t have been sedated with the assistance of anesthesiology,” and he was asked “[H]ow does that change the fact that sedation or anesthesia pose[d] a risk of death to your patient?” In addition, references were made to “more sedation,” “some kind of sedation or anesthesia,” and “some anesthesia.” Those questions and references are simply a few examples of a multitude of instances where the term sedation was used but not defined by plaintiffs’ counsel at deposition. At one point in the deposition, Dr. Bellafiore was asked a question regarding “mild sedation,” to which he responded: “Well, what’s the definition of mild sedation?” No attempt was made by plaintiffs’ counsel to define mild sedation before moving on to another topic. That seems to have been the trend at Dr. Bel-lafiore’s deposition: when he would reply to a question in a somewhat general manner, there was a frequent noteworthy failure to follow-up or ask more specific questions. The deposition afforded plaintiffs’ counsel the opportunity to probe beneath the surface in order to make Dr. Bellaf-iore’s position specific and clear, but counsel failed to avail herself of that opportunity-
The distinctions between giving a sedative, conscious sedation, and general anesthesia, which were so extensively examined at trial, are noticeably absent from the deposition questions. That fact is especially curious in view of the fact that Dr. Bellafiore’s answer to plaintiffs’ complaint contained an affirmative defense of assumption of the risk as well as an explicit statement that Dr. Bellafiore was asserting “all applicable defenses relating to comparative negligence and contributory negligence;” those statements should have put plaintiffs and their counsel on notice that how much sedation was offered, when it was offered, and when it was refused by Mr. Manning would be of paramount importance in this case. Nonetheless, plaintiffs’ counsel opted, for whatever reason, not to depart from generalities with respect to levels of sedation, and she made no attempt to clarify what each party’s understanding of those general terms were.
The confusion over the specifics of sedation and anesthesia was readily apparent at trial. On the second day of questioning, Dr. Bellafiore responded as follows to a question posed by plaintiffs’ counsel: “Now, you need to define anesthesia, conscious sedation for me, because I’m not sure what we are talking about.” Moreover, after finally and at length arriving at a definition of conscious sedation and delineating three levels or types of sedation, an exchange such as the following still took place:
“Q. And we can agree that sedation short of general anesthesia is conscious sedation?
“A. No, I can’t agree to that because I don’t know what you mean by that. *527 I mean, I asked you to define the terms. And when you say ‘short of general anesthesia,’ I don’t know if that’s conscious sedation. I don’t know if that’s — I don’t know what that is.”
Additionally, during Dr. Bellafiore’s trial testimony, when plaintiffs’ counsel was questioning him with respect to his lack of testimony about conscious sedation at his deposition, defense counsel was required to raise the following very significant objection: “I object, your Honor * * * [The plaintiffs’ counsel] spent 45 minutes trying to define and write on the chart [the various levels of sedation] versus what was done at deposition. There was no definition done [at deposition]. There was no distinction between the three at deposition.”
Despite the nature of the deposition questions, plaintiffs’ counsel implied at trial that Dr. Bellafiore had been untruthful in not providing more specific, detailed answers to the deposition questions and in not clarifying what he meant by sedation. Those implications are rampant in the examination of Dr. Bellafiore at trial, and he repeatedly had to explain that he “tried to answer the questions as clear as [plaintiffs’ counsel] asked [him]. [He] tried to answer exactly the question [he] was asked.” In addition to the implications by plaintiffs’ counsel, the trial justice stated in his decision that Dr. Bellafiore should have recognized that informed consent was “very much in issue” and should have disclosed related facts “when asked” during discovery. However, it is absolutely crucial to note that, contrary to the trial justice’s assertion, Dr. Bellafiore did answer the questions that were put to him; it is not, nor has it ever been in our system, the responsibility of a deponent to provide information that he or she is not asked for at a deposition. The fact that the questions asked at the deposition did not provide the information which plaintiffs would have found useful at trial is the fault of the questioner, not the deponent; certainly the deponent should not be penalized for the failure of the questioner to have asked more searching questions at the deposition. In seeming disregard of these record-based considerations, the majority opinion still hold's that Dr. Bellafiore’s actions somehow satisfy the very high standard applicable to sanctions levied under the inherent power of the court. But such a holding is puzzling after one conducts a full review of the record and thereby comes to realize the depth of confusion which existed in this case with respect to how to define and delineate levels of sedation.
The trial justice pointed out, as one of his five bases for sanctioning Dr. Bellaf-iore, that Dr. Bellafiore did not use the term “conscious sedation” during discovery. What the trial justice did not address, however, is the fact that neither did counsel for plaintiffs. Moreover, it is not only Dr. Bellafiore who began using the term “conscious sedation” at trial; the same is true for plaintiffs’ counsel. I note additionally that any prejudice purportedly suffered by plaintiffs in this case was surely mitigated by the extensive examination of Dr. Bellafiore at trial regarding every supposed inconsistency with his deposition testimony. We expressly acknowledged in our opinion in Manning v. Bellafiore, M.D., 991 A.2d 399, 404 (R.I.2010), that the plaintiffs, at trial, “vigorously disputed Dr. Bellafiore’s contention that he had frequently offered Mr. Manning conscious sedation as a means of completing the MRI/ MRA examination and repeatedly pointed out that, in both his answers to interrogatories and his deposition testimony, Dr. Bellafiore had failed to mention offering this option.” Therefore, whatever inconsistency there may have been was already *528 before the jury, whose members were free to assess how those inconsistencies might affect Dr. Bellafiore’s credibility. See State v. Richardson, 47 A.3d 305, 314 (R.I.2012) (“It is axiomatic that [t]he determination of the truthfulness or credibility of a witness lies within the exclusive province of the jury.”) (internal quotation marks omitted). Moreover, it is telling that, despite the assertion by the majority that Dr. Bellafiore’s testimony at trial was some sort of “bombshell,” it took plaintiffs’ counsel over a week to move for entry of default.
In conclusion, when one looks at the entirety of the deposition testimony, Dr. Bellafiore’s trial testimony, and his answers to interrogatories, rather than myopically looking at only the purported inconsistencies perceived by the trial justice, it is obvious that Dr. Bellafiore was not acting with malice, unjustly, in a harassing manner, or dishonestly; Dr. Bellafiore did not lie during the discovery process, and there is no evidence of an intent to evade, contrary to the trial justice’s rather hyperbolic characterizations.[5] In addition, my careful perusal of the portions of Dr. Bel-lafiore’s deposition testimony that are quoted in the majority opinion and my reading of the remainder of his deposition testimony, have completely failed to convince me that there was any evasiveness or “hidden ball” behavior on the part of the deponent. Doctor Bellafiore’s deposition answers and his answers to interrogatories are arguably lacking in optimal specificity, but it is clear to me that any inconsisten-, cies which resulted were at best the product of negligence. I have been unable to perceive any evidence in the record tending to show that Dr. Bellafiore’s actions could be characterized as having been taken in bad faith, wantonly, vexatiously, or for oppressive reasons. During the course of the adversarial interaction that is the essence of the litigation process, it is not uncommon for there to be answers which lack specificity or for there to be some degree of inconsistency between deposition and trial testimony; that is not in and of itself a valid basis for sanctions. I simply cannot in good conscience concur in the majority’s opinion to the contrary.
Ill
Furthermore, my decision to dissent in this case is also driven by the fact that the majority fails to address the ample precedent indicating that a court’s inherent power to sanction must be exercised in very limited circumstances and with great restraint. The United States Court of Appeals for the First Circuit has stated that, “even when inherent powers legitimately can be invoked, they must be exercised with restraint and circumspection, both ‘because [they] are shielded from direct democratic controls,’ ” United States v. Horn, 29 F.3d 754, 760 (1st Cir.1994) (Selya, J.) (quoting Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980)), and “[b]ecause of their very potency!.]” Id. (quoting Chambers, 501 U.S. at 44, 111 S.Ct. 2123). The United States Court of Appeals for the Third Circuit has echoed the First Circuit in stating that “ ‘[b]ecause of their very potency’ * * * the federal courts must be careful to exercise their inherent powers “with restraint and discretion.’ ” Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc., 57 F.3d 1215, 1224 (3d Cir.1995) (quoting Chambers, 501 U.S. at *529 44, 111 S.Ct. 2123); accord Natural Gas Pipeline Co. of America v. Energy Gathering, Inc., 86 F.3d 464, 467 (5th Cir.1996); 61A Am. Jur. 2d Pleadings § 601 at 609 (2010).
Moreover, a court should use its power to sanction only “if to do so is essential to preserve the authority of the court” and may do so only after “[ejareful analysis and discrete findings.” 61A Am. Jur. 2d Pleadings § 605 at 615; cf. Huntley v. State, 109 A.3d 869, 875 (R.I.2015) (holding that there was no abuse of discretion in an award of Rule 11 sanctions “given that the hearing justice carefully reviewed the record” before issuing the sanctions). The sanction which is chosen by the imposing court “must employ the least possible power adequate to the end proposed” and “[i]f there is a reasonable probability that a lesser sanction will have the desired effect, the court must try the less restrictive measure first.” Natural Gas Pipeline Co., 86 F.3d at 467 (internal quotation marks omitted); see Spallone v. United States, 493 U.S. 265, 280, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990) (stating that “a court must exercise [t]he least possible power adequate to the end proposed”) (internal quotation marks omitted); cf. Huntley, 109 A.3d at 873 (stating, in the context of Rule 11 sanctions, that the trial justice’s chosen remedy should take into account the “purpose of the rule: to deter repetition of the harm, and to remedy the harm caused”) (internal quotation marks omitted).
The above-referenced principles indicate that the inherent power to sanction should be -used only in the most limited circumstances. I can conceive of no interpretation of the record that would result in the conclusion that such circumstances are present in the instant case, nor does the majority attempt to show that such circumstances are present. With all due respect for the trial justice, I am unable to say that he acted in this case on the basis of a careful analysis and discrete findings given that the sanctions decision contains numerous material errors. See 61A Am. Jur. 2d Pleadings § 605 at 615. I fail to understand how the trial justice could have concluded that he was acting within his discretion and with the required restraint when he imposed such a massive fine on a layperson — an individual who, by definition, does not have the same familiarity with the legal system and the rules of discovery as an attorney. The trial justice appears not to have given sufficient weight to the fact that human memory is a notoriously fallible instrument. Doctor Bellaf-iore’s testimony, both at deposition and at trial, was based on his memory of the events surrounding Mr. Manning’s treatment. At the time of the deposition, it had been over three years since those events occurred; and, by the time of trial, it had been approximately seven years since their occurrence. In my judgment, it is not reasonable for the trial justice and the majority to expect a layperson’s memory of events to be exactly the same three years and seven years after the events in question.
In my opinion, if any inconsistencies were present, they were more than adequately dealt with by the granting of plaintiffs’ motion for a new trial. The trial justice should have recognized that he had thereby employed the least amount of power needed for the end he deemed to be appropriate and that no further action was required to preserve the authority of the court. See Natural Gas Pipeline Co., 86 F.3d at 467; 61A Am. Jur. 2d Pleadings § 605 at 615. The granting of plaintiffs’ motion for a new trial led to an eventual settlement between plaintiffs and Dr. Bel-lafiore, and it certainly constituted sanction enough in this case, even if (contrary *530 to my unwavering belief) a sanction was called for.
Litigation is no day at the beach; it is a grueling activity, accompanied by many twists and turns. The lengthy trial in this case surely had its share of such twists and turns. But I am adamant in my conviction that nothing improper occurred during the discovery phase of this case or during the trial. There was simply no basis for the sanction that was imposed. Poorly conducted discovery on behalf of the plaintiffs resulted in confusion mid-trial. I simply do not comprehend why Dr. Bellafiore is being sanctioned for that chain of events. I have set forth with care the reasons why I believe that there should have been no sanction whatsoever. And it is my further belief that, even granting for the sake of argument that the majority is correct in perceiving sanctiona-ble conduct, the sanction, in the amount determined by the majority, is unreasonable in the extreme. I feel very strongly that justice has not been served in this case. Accordingly, while I concur in the majority’s opinion with respect to vacating the sanction imposed against White & Kelly, P.C., I am unable to find strong enough terms to express my conviction that the majority errs gravely in upholding any sanction against Dr. Bellafiore. Consequently, with respect, but most forcefully, I hereby record my dissent.

. I wish to clarify my position with respect to the sanction imposed on the law firm of White & Kelly, P.C. I am of one mind with the majority that no sanction should have been imposed on that professional office — because I do not believe that any sanctionable conduct occurred in this case. However, I take issue with the majority's approach whereby it overturns the sanction against the law firm while simultaneously upholding the sanction against Dr. Bellafíore. In my judgment, if it was appropriate to sanction Dr. Bellafíore, then his counsel should have been sanctioned as well.

. The majority opinion candidly acknowledges the flawed nature of the trial justice’s decision. Regrettably, however, the majority opinion makes such acknowledgment only briefly and then moves on without giving meaningful consideration to just how greatly fact-finding errors of the magnitude present in the instant case call into doubt the dependability of the entirety of the trial justice's decision, including his ultimate conclusion.

. See Midazolam Hydrochloride Injection, The Physicians’ Desk Reference, http://www. pdr.net/drug-summary/Midazolam-Hydrochloride-Injection-midazolam-hydrochloride-985 (last visited June 3, 2016) (Versed and Midazolam are the same medication; they simply have different brand names).

. See, e.g., Olamuyiwa v. Zebra Atlantek, Inc., 45 A.3d 527, 535 (R.I.2012) ("It is well established that [w]hen * * * a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary.”) (internal quotation marks omitted); Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island, 31 A.3d 1263, 1269 (R.I.2011) ("This meaning is consistent with the common sense, dictionary definition of ‘public’ with respect to expenditures.”); In re Proposed Town of New Shoreham Project, 25 A.3d 482, 513 (R.I.2011) (“When, as is the case here, a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary.”) (internal quotation marks omitted).

. In his written decision concerning sanctions, the trial justice used words like “shocking,” "jaw-dropping,” and "surprise testimony.” He further stated that Dr. Bellafiore "opted to modify his version of the truth” and that plaintiffs' counsel was "blindsided” by Dr. Bellafiore’s trial testimony.