Charles Burns et al.                    :

            v.                          :

Moorland Farm Condominium               :
    Association, et al.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Charles Burns et al.                    :

v.                              :

Moorland Farm Condominium          :
    Association, et al.


Present: Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** What is before this Court for review is whether outdoor decks in a condominium development are common elements, to be repaired as a common expense, or parts of the individual units, the repair of which is chargeable to the individual unit owners. When the oldest units in the thirty-three-unit Moorland Farm Condominium required repairs to their decks, the repairs were treated as common expenses. Accordingly, the repair costs were assessed to all unit owners. The owners of those condominium units that were not benefiting from the improvements protested. Eventually, they filed a declaratory-judgment action in Superior Court in which they sought a declaration that the assessments were illegal. After a bench trial, a justice of that court issued a decision in which he found that the assessments were indeed not proper. The defendant Moorland Farm Condominium Association timely appealed, arguing that the trial justice erred in several respects. For the reasons set forth in this opinion, we vacate the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel

The Moorland Farm Condominium (Moorland Farm) in Newport was established in 1980 by a declaration of condominium. It consists of thirty-three units in ten buildings. The units were constructed in three phases: Phase I was already completed when the declaration was executed; Phases II and III were constructed later and added to the project by amendment to the declaration. The units in Moorland Farm's various phases differ not only in when they were constructed, but also in their size, amenities, and configuration. Phase I contains both larger "B Units" and smaller "A Units"; on the other hand, Phase II and Phase III contain only the smaller "A Units."[1]

In addition to establishing Moorland Farm itself, the declaration of condominium established defendant Moorland Farm Condominium Association (the association). According to the declaration, it is the responsibility and function of the association to "manage and regulate" Moorland Farm. All condominium unit owners are members of the association. The bylaws of the association established a management committee through which the association would act. Among the powers that the bylaws bestow upon the management committee is the power to levy assessments on the individual unit owners for the maintenance of Moorland Farm, such as "[o]peration, maintenance, cleaning, and care of the common areas and facilities," and "[d]etermin[ing] the common expenses required for the affairs of [Moorland Farm]." However, this authority is not unfettered; the management committee is permitted to "expend common funds only for common expenses and lawful purposes * * * ."

---

[1] Although the parties' stipulation of agreed upon facts and the decision of the Superior Court say that the "A Units" are larger than the "B Units," the declaration's provisions make clear that the larger units are "B Units."

In 2005 or 2006, the management committee became aware that certain decks in Moorland Farm were in need of repair, so it engaged an engineering firm to determine the extent of the work. At the same time, the management committee investigated the means by which it might fund those repairs. Eventually, between 2006 and 2008, the management committee issued a series of special assessments, the proceeds of which were to be used for the ailing decks.

The first special assessment was in the amount of $205,600; it was allocated to pay for repairs to decks attached to four Phase I condominium units. The second special assessment was for $500,000, and it was allocated to pay for repairs to decks attached to the eight remaining Phase I units. The third special assessment was in the amount of $180,000, and it was allocated, in part, to pay for repairs to Phase I buildings. The fourth assessment was in the amount of $100,050. With each of the assessments, the six larger "B Units," which are located exclusively in Phase I, were allocated a higher percentage of the assessment than did the smaller "A Units," six of which are located in Phase I and the remaining twenty-one of which are located in Phases II and III.[2]

The plaintiffs, all of whom either own units or serve as the trustees of trusts that own units in Phase II or Phase III, objected to being assessed to pay for repairs to Phase I units, specifically, the decks, pocket decks, and entry court areas of Phase I units.[3] They demonstrated their disagreement by filing an action in the Superior Court. The complaint named the

---

[2] As described above, the nomenclature used to describe the units in Moorland Farm is somewhat inconsistent. Nonetheless, there is no dispute that the larger units were assigned a higher amount for each of the four special assessments because they have a larger "approximate assignable area" than the smaller units.

[3] The term "pocket deck" refers to a deck that is located on the second floor of condominium units. Rather than extending beyond the interior footprint of a unit, pocket decks sit above living space and are set into a condominium unit's roof. The "entry court area" of a unit is enclosed outdoor space immediately adjacent to the units that includes the steps leading to the front door of the unit.

association and the individual members of the management committee, in their capacity as members of that body, as defendants. The second amended complaint sought a declaration that the four special assessments were illegal because, plaintiffs alleged, the decks were neither common areas nor limited common areas, but rather were part of individual units.[4] In addition, plaintiffs sought reimbursement of any amounts that had been paid towards the assessments. Further, plaintiffs requested that the court "order defendants to reassess the four * * * special assessments to the individual unit owners whose properties specifically benefited from the illegal assessments" and, if those reassessments were not paid, to file liens against the benefited units pursuant to G.L. 1956 § 34-36-19.

Significantly, in their answer defendants raised the affirmative defense that plaintiffs had failed to join necessary and indispensable parties. Moreover, when the trial was about to commence, the attorney for one of the management committee defendants pointed out to the trial justice that not all the necessary parties had been named in the action. Specifically, he told the trial justice that any reimbursement to plaintiffs "[wa]s going to come from other unit owners, and none of those unit owners [we]re before the [c]ourt." The trial justice did not respond to the statement of counsel but instructed plaintiffs' attorney to call his first witness.

At the conclusion of the trial, the trial justice issued a written decision. In it, he ruled that jurisdiction in the matter was based on the Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9. The trial justice further found that the designated repairs to the Phase I decks and entry court areas would cost $669,554.08. He also determined that, "based on the

---

[4] The four-count second amended complaint also included claims for breach of contract, breach of fiduciary duty, and violation of the Condominium Ownership Act. These counts were voluntarily dismissed pursuant to Rule 41 of the Superior Court Rules of Civil Procedure, so only the declaratory-judgment count was decided by the trial justice. This stipulation also dismissed the management committee defendants from the case.

clear and unambiguous language of the [condominium] documents, as well as the Condominium Act, * * * the decks are part of the individual condominium units." As a result, the trial justice held, the four assessments were illegal.

A judgment was entered reflecting the written decision. The judgment ordered the association to "vacate [the] assessments and reassess the costs covered in the four special assessments." Importantly, the judgment specifically ordered that "[i]n such reassessment, [the association] shall allocate the costs * * * of the deck replacement project * * * to the individual unit owners whose decks and entry court areas were replaced or repaired." The association timely appealed to this Court, asserting myriad errors.

In its appeal, the association argues that the trial justice should not have allowed the case to proceed to trial because there were indispensable parties who had not been joined in the action. Further, it argues that the trial justice erred when, in deciding the merits of the case, he determined that the decks were part of the individual units; when he excluded the affidavit of an expert witness; and when he refused to grant relief from the judgment pursuant to Rule 60(b) of the Superior Court Rules of Civil Procedure. Finally, the association claims that the trial justice erred when he imposed a sanction against it for bringing the Rule 60(b) motion. We will supply additional facts where necessary to decide the issues before us.

## II

### Indispensable Parties

First, the association argues that the trial justice committed error by advancing to trial in the absence of all indispensable parties. Specifically, the association asserts that the lawsuit's critical defect is its failure to include the Phase I unit owners who received the benefit of the association's assessment for deck repairs but who would bear the financial burden of the

reallocated costs as set forth in the judgment. Conversely, plaintiffs maintain that the association is the only necessary defendant because the judgment imposes an obligation only upon the association to reallocate and reassess the deck repairs. Therefore, they argue, the individual Phase I owners are not indispensable parties. Any unit owner's responsibility to pay legal assessments, according to plaintiffs, is a contractual obligation that is based on the declaration, and not on the result of this action.

Section 9-30-11 provides, in pertinent part, that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." This requirement furthers the purpose of the Uniform Declaratory Judgments Act, chapter 30 of title 9, which is "to facilitate the termination of controversies." Abbatematteo v. State, 694 A.2d 738, 740 (R.I. 1997) (quoting Thompson v. Town Council of Westerly, 487 A.2d 498, 499 (R.I. 1985)).

We have held that the above-cited provision in § 9-30-11 is mandatory. Thompson, 487 A.2d at 499; In re City of Warwick, 97 R.I. 294, 296, 197 A.2d 287, 288 (1964). Therefore, "[o]rdinarily 'failure to join all persons who have an interest that would be affected by the declaration' is fatal." Abbatematteo, 694 A.2d at 740 (quoting Thompson, 487 A.2d at 499).

In Abbatematteo, 694 A.2d at 739, certain participants in the Employees' Retirement System of the State of Rhode Island sued (1) for a declaration that the retirement system's payment of more generous benefits to some retirees was unconstitutional and (2) for an injunction putting an end to those payments. The retirees allegedly receiving more generous benefits, however, were not made parties to the case. Id. at 740. We affirmed the trial court's dismissal of the action, reasoning that the absent retirees were indispensable because

"[d]isposition of the action in [the] plaintiffs' favor * * * would reduce or eliminate pension benefits for th[e] 'favored' members of the retirement system." Id.

Similarly, a declaratory-judgment action in In re City of Warwick, 97 R.I. at 295-97, 197 A.2d at 287-89, was incurably defective because of the absence of all of the municipal board members whose appointments were at issue. In that case, the mayor sought a declaration as to whether the municipal charter or general statutes controlled the selection of members of certain municipal boards. Id. at 295-96, 197 A.2d at 287-88. This Court held that the mayor was required to have included all members of the boards in that action because their absence "deprive[d] the decree appealed from of any binding effect as to [them] * * * and could in the future lead to needless litigation if the rights declared [in that case] were attempted to be enforced against them." Id. at 296-97, 197 A.2d at 288. We rejected the contention that any board member's absence could be excused because a member of each of the relevant boards appeared at the hearing and represented the interests of their co-members. Id. at 297, 197 A.2d at 288-89.

We also have required joinder where the "interest" that "would be affected by the declaration" was not the reduction of retirement benefits or the potential termination of a term on a municipal board, but rather a city council member's interest in the municipal budget process. See Sullivan v. Chafee, 703 A.2d 748, 749-50, 754 (R.I. 1997). In Sullivan, a dispute over the annual budget caused some members of the city council to seek declaratory relief, and, although we held that the case was moot, we also said that the failure to include the entire nine-member council was "fatal to their declaratory-judgment action." Id. at 754.

In the case before us, plaintiffs have not sued the owners of the Phase I units whose decks were repaired, yet the complaint sought and the judgment specifically decrees that the

association "allocate the costs" to them. We cannot fathom how those unit owners do not "have or claim any interest which would be affected by the declaration." See § 9-30-11. Similarly, because "no declaration shall prejudice the rights of persons not parties to the proceeding," § 9-30-11, the fact that these unit owners are being ordered to bear an additional burden even though they were not part of the case undermines the purpose of declaratory-judgment actions, which is "to facilitate the termination of controversies." Abbatematteo, 694 A.2d at 740 (quoting Thompson, 487 A.2d at 499). The omission of those parties was raised both as an affirmative defense in the association's answer and on the record on the day of trial.[5] The case should not have proceeded without those parties whose interests would be affected by the declaration.

Although this Court has not previously had the opportunity to consider this issue in the context of a condominium development, we do find support for our conclusion in the decisions of courts in other jurisdictions that have decided it. In one case, owners of condominium units that were located in buildings that were not equipped with elevators sued for declaratory relief after their condominium association assessed the cost of elevator repairs to all units. Epstein v. Villa Dorado Condominium Association, Inc., 316 S.W.3d 457, 458-59 (Mo. Ct. App. 2010). The court held, based on statutory language identical to our own, that the failure to join all owners who lacked elevator access was destructive to the cause of action because the absent owners "had an obvious interest in any judicial declaration regarding the elevators." Id. at 461.

In another case with facts similar to those before us, the Court of Appeals of Ohio, albeit in an unpublished opinion, reviewed a declaratory-judgment action brought by some condominium owners who had been assessed for repairs to the balconies of other condominium

---

[5] We empathize with the trial justice and recognize the difficult position in which he found himself when, on the morning of trial, he was presented with the argument that the case was gravely defective.

owners. See Cerio v. Hilroc Condominium Unit Owners Association, Inc., No. 83309, 2004 WL 529106 at *1 (Ohio Ct. App. Mar. 18, 2004). That court, also applying a statute similar to § 9-30-11, held that the unit owners whose condominiums had balconies were necessary parties, explaining that "th[ose] unit owners with balconies [we]re * * * individually responsible for the cost of the repair and maintenance of the balconies, whereas the cost was previously to be shared by the entire association." Cerio, 2004 WL 529106 at *3.

The Court in Cerio, 2004 WL 529106 at *3, also observed that the absence of all necessary owners created the possibility of piecemeal litigation because two separate groups could have pursued litigation. Absent owners without balconies could have sued, as did the Cerio plaintiffs themselves, to avoid the original assessment, and absent owners with balconies could have sued to avoid their new, higher repair costs. Id. Similarly, in this case, the Phase I unit owners who were not joined could sue to avoid paying the reassessments ordered by the judgment in this case. Such a result is antithetical to the purpose of declaratory-judgment actions. See § 9-30-6 ("The court may refuse to render or enter a declaratory judgment or decree where the judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding."); In re City of Warwick, 97 R.I. at 296-97, 197 A.2d at 288; see also Cerio, 2004 WL 529106 at *3.

We are constrained to follow our consistent pronouncements regarding mandatory joinder in declaratory-judgment actions. Therefore, we hold that the failure to join indispensable parties in this case was fatal and that the judgment is null and void.[6] As a consequence of that holding,

---

[6] Our statutes and cases make clear that the Phase I unit owners should have been joined in this case. In Abbatematteo v. State, 694 A.2d 738, 740 (R.I. 1997), we did not base our holding on the number, either large or small, of retirees who were absent from the case. We previously have assumed without deciding that joinder might be excused if it would be impracticable because the parties to be joined were too numerous or service would be "unreasonabl[y] burden[some]." See

the remaining issues relating to the merits of this dispute have been rendered moot, and we need not, and shall not, reach them.

## III

### Sanctions

We will, however, review the association's contention that the trial justice abused his discretion when he sanctioned it under the provisions of Rule 11 of the Superior Court Rules of Civil Procedure as a result of its filing of a Rule 60(b) motion. Although the judgment from which the association's Rule 60(b) motion sought relief has been vacated, the propriety of the sanction remains before us.

The United States Supreme Court has held that the imposition of sanctions is a "collateral issue" that may be determined independently from "the merits of an action." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 396 (1990). Specifically, the Supreme Court said that "a Rule 11 sanction is not a judgment on the merits of an action" but instead "requires a determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." Cooter & Gell, 496 U.S. at 396. That is because "the 'violation of Rule 11 is complete when the paper is filed.'" Cooter & Gell, 496 U.S. at 395 (quoting Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1077 (7th Cir. 1987)).

After the entry of judgment, the association hired an accounting firm, Kahn, Litwin, Renza & Co. (KLR), to ascertain the manner in which it should reallocate the costs of the deck-repair project. Included in the report produced by KLR was its conclusion that the deck-repair

Thompson v. Town Council of Westerly, 487 A.2d 498, 500 (R.I. 1985) (recognizing that in certain circumstances, impracticability may justify representation by class members (citing In re City of Warwick, 97 R.I. 294, 297, 197 A.2d 287, 289 (1964))). While this may prove to be true in the context of some extremely large and hypothetical condominium development, such a case is not before us.

project included repairs to elements of Phase I buildings that were without question common elements. Based on KLR's report, the association filed a motion for relief from the judgment pursuant to Rule 60(b)(2) and Rule 60(b)(6),[7] in which it argued that approximately $130,000 of the $669,554.08 was for repairs to areas other than decks or entry court areas. The plaintiffs objected to the motion and asked the trial justice to impose sanctions on the association pursuant to Rule 11. The trial justice denied the Rule 60 motion and sanctioned the association, determining that the motion was without foundation in fact or law and had been filed in bad faith for the purpose of delay and to harass plaintiffs. As a sanction, the trial justice ordered the association to pay plaintiffs' attorneys $6,200.

## A

## Standard of Review

We review a trial justice's awarding of sanctions under an abuse-of-discretion standard. In re Briggs, 62 A.3d 1090, 1097 (R.I. 2013) (citing Pleasant Management, LLC v. Carrasco, 918 A.2d 213, 217 (R.I. 2007)). Therefore, we will reverse a sanction "only if the trial court 'based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" Michalopoulos v. C & D Restaurant, Inc., 847 A.2d 294, 300 (R.I. 2004) (quoting Lett v. Providence Journal Co., 798 A.2d 355, 367 (R.I. 2002)).

---

[7] Rule 60(b) of the Superior Court Rules of Civil Procedures provides in pertinent part that
> "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: * * * (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); * * * or (6) any other reason justifying relief from the operation of the judgment."

# B

## Discussion

Rule 11 requires attorneys to "make [a] reasonable inquiry to assure that all pleadings, motions and papers filed with the court are factually well-grounded, legally tenable and not interposed for any improper purpose." Pleasant Management, LLC, 918 A.2d at 218 (quoting Mariani v. Doctors Associates, Inc., 983 F.2d 5, 7 (1st Cir. 1993)). According to Rule 11, such improper purposes may include efforts "to harass or to cause unnecessary delay or needless increase in the cost of litigation." The rule allows a trial justice "to formulate what he or she considers to be an appropriate sanction, but he or she must do so in accordance with the articulated purpose of the rule: 'to deter repetition of the harm, and to remedy the harm caused.'" In re Briggs, 62 A.3d at 1098 (quoting Pleasant Management, LLC, 918 A.2d at 217).

In our opinion, it was inappropriate for the trial justice to sanction the association for its Rule 60(b) motion. After reviewing KLR's report, the association learned that some of the costs that the judgment required to be reallocated may have been more properly attributable to common areas, so it filed its motion. Even though the trial justice disagreed with the association, and even if the information contained in the report did not pass muster as newly discovered evidence, we nonetheless conclude that the motion had a factual foundation. Further, it is our opinion that the motion had a legal basis because the association also requested relief from the judgment on the ground of "any other reason justifying relief from the operation of the judgment." See Rule 60(b)(6). Therefore, we vacate the order imposing sanctions.

**IV**

**Conclusion**

For the foregoing reasons, we vacate the judgment of the Superior Court.  The case is remanded so that it may be dismissed without prejudice.

Chief Justice Suttell did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Charles Burns et al. v. Moorland Farm Condominium Association, et al.

**CASE NO:** No. 2011-107-Appeal.
(NC 07-610)

**COURT:** Supreme Court

**DATE OPINION FILED:** March 10, 2014

**JUSTICES:** Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:** Newport County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Stephen P. Nugent

**ATTORNEYS ON APPEAL:**

For Plaintiff: William R. Grimm, Esq.

For Defendant: Lauren E. Jones, Esq.