May 12, 2017

**Supreme Court**

No. 2015-363-Appeal.
No. 2015-364-Appeal.
(PC 14-1628)

|  |  |
|---|---|
| Town of Warren et al. | : |
| v. | : |
| Bristol Warren Regional School District et al. | : |
| and |  |
| Town of Bristol by and through its Town Council and its Town Treasurer, Julie Goucher, As Interested Party. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2015-363-Appeal.
No. 2015-364-Appeal.
(PC 14-1628)

Town of Warren et al.        :

v.        :

Bristol Warren Regional School District et  :
al.

and

Town of Bristol by and through its Town
Council and its Town Treasurer, Julie
Goucher, As Interested Party.

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** These consolidated appeals arise from a judgment of

the Superior Court regarding the statutory interpretation of the manner in which state education

aid funds that are received by the Bristol Warren Regional School District (BWRSD or district)

should be calculated and apportioned to its constituent towns, Bristol and Warren. The

defendants, the BWRSD, the Bristol Warren Regional School Committee (BWRSC or

committee), and the Town of Bristol, appeal from a Superior Court judgment granting Warren's

petition and complaint for declaratory judgment.[1] The defendants argue that the trial justice

misconstrued the Rhode Island Board of Education Act, G.L. 1956 chapter 7 of title 16

(Education Act) and the Rhode Island Education Equity and Property Tax Relief Act, G.L. 1956

---

[1] The Rhode Island Department of Education was a named defendant in the second amended complaint in the lower court but did not appeal the decision of the Superior Court.

- 1 -

chapter 7.2 of title 16 (Funding Formula Act). The defendants further maintain that the trial justice failed to accord proper deference to the Rhode Island Department of Education's (RIDE) interpretation of those statutes. In a separate argument, Bristol posits that the Superior Court did not have jurisdiction over this declaratory-judgment action because Warren failed to join all interested parties and further that Warren's claims are barred by the doctrine of res judicata. After careful consideration of the record, and for the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

### The BWRSD and the Enabling Legislation

The contiguous towns of Bristol and Warren form the BWRSD, which was established pursuant to chapter 330 of the 1991 Public Laws of Rhode Island (enabling legislation). The BWRSC, consisting of nine members, was created to govern the BWRSD in accordance with the enabling legislation. The Joint Finance Committee (JFC) was formed under P.L. 1991, ch. 330, sec. 3, § X(I)(3) of the enabling legislation; it consists of nine members appointed by the town councils of Bristol and Warren. At the time of the dispute, the JFC comprised six representatives from Bristol and three from Warren.[2]

The enabling legislation lays out the approval process for the district's annual budget. In that regard, it provides that the superintendent of the district is to prepare and present a preliminary annual budget to the committee containing estimates of the funds needed to operate the district for the ensuing fiscal year. The committee then submits its proposed budget to the JFC for approval. Upon approval of the budget, each town is required to appropriate funds for

---

[2] The representation of the JFC's membership is apportioned according to the most recent federal census.

the district, which are "apportioned between the cities on a per public pupil calculation using enrollment as of the prior October 1," pursuant to the enabling legislation.[3]

The parties have stipulated[4] that, since the formation of the BWRSD, its treasurer would reduce the annual budget, as approved by the JFC, by the total amount of state aid and any other miscellaneous revenue sources, and then would apportion the remaining balance of the budget by the student population, on a per-capita basis from each municipality.

### The Prior Litigation

In 2012, the BWRSD and the BWRSC filed suit against Warren, seeking a declaratory judgment and a writ of mandamus, demanding that Warren appropriate its full share of the 2012-2013 school budget for the BWRSD, as was determined by the JFC. See Bristol Warren Regional School District v. Town of Warren, No. PC12-4653, 2014 WL 1396941 (Apr. 4, 2014) (the prior litigation). The budget for that fiscal year required that Warren pay the sum of $12,164,919 to the district. Id. at *2. However, Warren balked; at its financial town meeting, the town voted to appropriate only $11,748,919 of the budgeted amount. Id. In April 2014, the Superior Court determined that Warren was not authorized to reject a budget that had been approved by the JFC because the enabling legislation cloaked the JFC with final budgetary authority. Id. at *6. Therefore, the court ordered Warren to appropriate the additional funds to the BWRSD. Id. That judgment was not appealed.

---

[3] In addition to P.L. 1991, ch. 330, sec. 3, § X(I)(3), sec. 3, § VII(I) provides that "[t]he total education costs of the [BWRSD] shall be apportioned between the towns based upon a per public pupil calculation, using enrollment as of the prior October 1."
[4] The parties submitted a stipulation of agreed facts to the trial court as well as a stipulation of disputed facts.

**The Current Dispute**

In early December 2013, while the prior litigation remained pending, the state representative for Warren contacted RIDE about the state calculations for the education aid funding formula. In particular, he questioned why Bristol and Warren were assessed the same local share per pupil even though Warren students, because of a higher rate of state aid, were generating a greater per-pupil share of the state revenues. In response to his inquiry, RIDE provided a spreadsheet that compared the formula aid by region and by member town for the BWRSD. According to Warren, those calculations "confirmed Warren's claim that it would in fact receive more aid if the calculations were made with reference to the comparative rates of students receiving free or reduced price lunch, rather than with reference to a blended figure."

In March 2014, Warren's finance director received an email from the district informing him of the projected 2014-2015 school budget. That same day, the finance director submitted a memorandum to the town manager, indicating that the proper allocation of state education aid should be on a weighted per-pupil basis in accordance with the basis of need of the municipalities. Attached to the memorandum was RIDE's funding formula analysis for the 2015 fiscal year showing the figures for Bristol and Warren, both separately and as a regional district. The memorandum was presented to the JFC shortly thereafter. The JFC, however, did not adopt the recommendations set forth in the memorandum.

Later that month, Warren filed a petition for writ of mandamus, injunctive relief, and a complaint for declaratory judgment against the BWRSD, the BWRSC, and the Town of Bristol. In its filing, Warren claimed that the enabling legislation and the Funding Formula Act required that state aid be allocated not on a per-capita per-pupil basis, but on a weighted per-pupil basis,

- 4 -

taking into account the number of students with free or reduced-price lunch in each town, the median income of each town, and the total assessed property values of each town.

## The Lower Court Proceedings

During a hearing on May 12, 2014, RIDE's senior finance officer testified that RIDE made use of specific data components to determine state education aid for individual districts. Those data components include the state share ratio, which consists of, among other factors, property values, free and reduced-price lunch data for students, and adjusted equalized weighted assessed valuations (EWAV). The senior finance officer affirmed that, under the funding formula, a poorer community typically is allocated more money from the state for education aid than a more affluent community. She further specified that, in the case of Bristol and Warren, state aid is currently "calculated as a regional district, so the data components are added together." Significantly, she testified that, if state aid were to be calculated separately, the state aid assigned to each student for Bristol would be $2,897 and $5,442 for Warren for the 2015 fiscal year.

Subsequent hearings were held on May 13 and 15, 2014. During the May 15 hearing, the trial justice determined that Warren's claim was not precluded under the doctrine of res judicata. In that regard, the trial justice concluded that he did "not believe that the issue of how the credits are to be apportioned [wa]s squarely addressed by the enabling legislation." The trial justice, however, did not at that time come to a conclusion about the ultimate statutory interpretation issue; instead, he asked the parties to submit supplemental memoranda and encouraged Warren to consider joining RIDE as a party to the litigation.

Warren then filed a second amended petition and complaint, naming RIDE as a defendant, because that agency oversees and disburses state aid to schools. Warren alleged that,

rather than allocate aid separately to Warren and Bristol as provided for under the Education Act and the Funding Formula Act, RIDE disbursed a lump sum to the BWRSD, which in turn subtracted the amount of state aid from its total budget and then apportioned the remaining cost to each town on a per-student basis. According to Warren, this improperly shifted some of Warren's state aid to Bristol and resulted in Warren being "overcharged" $2,054,790 in fiscal year 2014-2015. RIDE subsequently filed a motion to dismiss Warren's second amended petition and complaint on the ground that the complaint failed to state a claim upon which relief could be granted against RIDE. All parties, including Warren, Bristol, the BWRSD, and the BWRSC, filed objections to RIDE's motion to dismiss. After a hearing on RIDE's motion to dismiss in July 2014, the trial justice denied the motion.

The case was reached for trial in April 2015. At the close of all the evidence, and after taking into consideration the memoranda and oral arguments of the parties, the trial justice issued a bench decision. With respect to the argument that the Superior Court lacked jurisdiction under the Uniform Declaratory Judgments Act (G.L. 1956 chapter 30 of title 9) because all interested parties had not been joined, the trial justice determined that there had not been any motion to add additional defendants by any party, nor had there been any request for intervention by any other school district to participate in the matter. The trial justice found that a determination in favor of defendants on the ground of failing to join all necessary parties would "essentially require[] the [c]ourt to speculate as to which other parties may or may not be affected by the [c]ourt's holding[.]" And the trial justice declared that "the [c]ourt should not have to speculate as to which other parties are going to be affected and which parties should or should not be joined."

With respect to defendants' arguments as to the amount of deference that should be afforded to RIDE, the trial justice recognized that there had been no regulation or authority that had been promulgated by the agency on the issue. The trial justice specified that

> "where the statute and any rule established by RIDE ha[d] not been established pursuant to any rulemaking process, any vetting, any solicitation of opinions, anything of that nature, that at most RIDE's position may have persuasive authority in order to give effect to the purpose of the Act as intended by the [L]egislature * * *."

He concluded that RIDE was "not entitled to full Chevron[5] deference because there ha[d] been no rule or regulation established by RIDE in regards to this legislation."

Turning to the statutory interpretation argument, the trial justice articulated "that RIDE and the Town of Bristol [we]re to a large extent basing their argument on a section that contain[ed] the definition of certain terms." He continued, "that definitional section d[id]n't in any way state how moneys [we]re to be allocated to other regional school districts. It only deal[t] with Chariho.[6] And the only section that state[d] specifically how the equalized weighted assessed valuation [wa]s to be determined [wa]s at [§] 16-7-21." The trial justice said that "the [L]egislature could have made a clear statement that Bristol Warren should be treated jointly for allocation and distribution, [but] it did not." The trial justice voiced that "the clear language of that statute * * * indicate[d] that the allocation should be determined directly pursuant to Bristol and Warren's individual tax bases as required by the funding formula both at [§] 16-7-21 and at [§] 16-7-20." He found "that the clear language require[d] that the allocation be made pursuant to each city and town." And he stated "that at best [§] 16-7-16 create[d] an

---

[5] Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44 (1984) (setting forth the legal test for determining, as a matter of federal jurisprudence, whether to grant deference to a government agency's interpretation of a statute which it administers).

[6] Chariho is another regional school district, consisting of the towns of Charlestown, Richmond, and Hopkinton.

ambiguity" and "what [wa]s more persuasive to the [c]ourt as to how to resolve that ambiguity [wa]s contained in the section regarding the legislative findings * * *."[7] The trial justice resolved "that if the money was allocated the way RIDE and Bristol ha[d] advocated, that that determination would not treat property taxpayers [equitably]; because it is clear and undisputed that Warren's tax base is substantially more depressed than Bristol's tax base." The trial justice determined that RIDE should calculate the funds separately, allocate them separately, and distribute the funds to the BWRSD separately.

On May 20, 2015, Warren filed a motion for final judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The Superior Court entered judgment on July 24, 2015,

> "direct[ing] entry of a declaratory judgment that, under the State Funding Formula, the Rhode Island Department of Education shall calculate and disburse funding formula funds separately for the Town of Bristol and the Town of Warren and distribute each allotment separately to the regional school district so that the treasurer of the regional school district under Section 12 of the enabling legislation shall receive the funds for each town and allocate credit accordingly[.]"

After judgment was entered on behalf of Warren, defendants timely appealed.[8]

## II

## Issues on Appeal

On appeal, the BWRSD and the BWRSC argue that the Superior Court erred when it (1) failed to give effect to the plain language of the Education Act and the Funding Formula Act mandating that state aid for a regional school district be calculated for the district as a whole and

---

[7] The legislative findings in G.L. 1956 § 16-7.2-1(b) of the Funding Formula Act articulate the statute's intent "to ensure educational opportunity to each pupil in each city or town on substantially equal terms."

[8] It is noteworthy that RIDE did not appeal the judgment of the Superior Court.

not separately for each municipality and (2) did not give full deference to RIDE's interpretation of the statutory framework concerning the proper manner of calculating and allocating state aid to regional school districts. In its appeal, the Town of Bristol contends that the Superior Court (1) misinterpreted the governing statutory scheme and ignored the statutory definition of "community" as it applies to funding to the BWRSD; (2) lacked jurisdiction because plaintiff failed to join the necessary parties; (3) did not afford the required deference to RIDE's interpretation of the statute; and (4) failed to bar plaintiff's claims pursuant to the doctrine of <u>res judicata</u>.

### III

### <u>Res</u> <u>Judicata</u>

### A

### Standard of Review

This Court "determine[s] the applicability of res judicata as a matter of law." <u>Ritter v. Mantissa Investment Corp.</u>, 864 A.2d 601, 605 (R.I. 2005) (citing <u>Wright v. Zielinski</u>, 824 A.2d 494, 497 (R.I. 2003)). We review determinations of questions of law <u>de</u> <u>novo</u>. <u>Lamarque v. Centreville Savings Bank</u>, 22 A.3d 1136, 1140 (R.I. 2011) (citing <u>Cathay Cathay, Inc. v. Vindalu, LLC</u>, 962 A.2d 740, 745 (R.I. 2009)).

### B

### Analysis

Bristol argues that Warren's claims are barred by the doctrine of <u>res judicata</u>.[9] Bristol specifically asserts that "[t]he issue between the parties in both the [p]rior [l]itigation and the current litigation is the interpretation of the [e]nabling [l]egislation and the JFC vote." Bristol

---

[9] The BWRSD and the BWRSC did not raise the issue of <u>res judicata</u> in their appeal.

argues that "Warren attempted unsuccessfully to argue the accuracy of the per pupil calculation in the [p]rior [l]itigation and yet never once raised their current interpretation of 'per pupil' during those arguments."

In our opinion, Bristol's argument is misplaced. This is so because, in this litigation, Warren is not arguing the meaning of "per pupil" as set forth in the enabling legislation; rather, Warren is claiming that the interpretation of the Education Act and the Funding Formula Act is incorrect.

"The doctrine of res judicata bars the relitigation of all issues that 'were tried or might have been tried' in an earlier action." Huntley v. State, 63 A.3d 526, 531 (R.I. 2013) (quoting Bossian v. Anderson, 991 A.2d 1025, 1027 (R.I. 2010)). "In essence, the doctrine * * * 'serves as an absolute bar to a second cause of action where there exists identity of parties, identity of issues, and finality of judgment in an earlier action.'" Id. (quoting Bossian, 991 A.2d at 1027).

When he decided the res judicata issue, the trial justice indicated that "[i]n this case there is no question that we have an identity of parties and a final judgment * * *." Because Bristol's claim of error includes only the trial justice's determination of the identity of issues, we shall address only that specific issue.

"In determining the scope of the issues to be precluded in the second action, we have adopted the broad 'transactional' rule." Ritter, 864 A.2d at 605 (quoting ElGabri v. Lekas, 681 A.2d 271, 276 (R.I. 1996)). "This rule precludes the re-litigation of 'all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.'" Id. (quoting ElGabri, 681 A.2d at 276). What constitutes a transaction or a series of connected transactions is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial

- 10 -

unit, and whether their treatment as a unit conforms to the parties' expectations * * *." Id. (quoting ElGabri, 681 A.2d at 276).

The trial justice determined that the issues in the present case did not arise from the same operative facts as those in the prior litigation. He indicated that "[t]here may be legal issues that are common; but they are not the same operative facts." The trial justice noted that, in the prior litigation, "the [c]ourt was asked to review the Town of Warren's failure to appropriate specific funds after the Joint Finance Committee had determined the budget for fiscal year 2012-2013; because Warren claimed that it had authority under the enabling legislation to deny the appropriation." The trial justice clarified that, "[a]lthough Warren raised the issue[] where the number of students were in issue, the per pupil that is the subject of this case was not raised, whether Warren should get credit for the average valuation." The trial justice concluded that the enabling legislation did not directly address the issue of how state aid is to be apportioned.

We agree with the trial justice's analysis and are of the opinion that the root of the dispute in the prior litigation was the interpretation of a particular section of the enabling legislation and whether Warren had the authority to reject or modify a budget that previously had been approved by the JFC. This is not the issue that we are asked to resolve in this case. Here, we are concerned with the interpretation of the state's Education Act and the Funding Formula Act. Therefore, it is our opinion that no identity of issues exists between the two cases and that the doctrine of res judicata did not bar the action.

## IV

## Section 9-30-11 and Necessary Parties

## A

## Standard of Review

"This Court has held that '[a] decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law.'" Bucci v. Lehman Brothers Bank, FSB, 68 A.3d 1069, 1078 (R.I. 2013) (quoting Hagenberg v. Avedisian, 879 A.2d 436, 441 (R.I. 2005)).

## B

## Analysis

Bristol argues that the Superior Court should not have exercised jurisdiction over the declaratory-judgment action because all necessary parties were not joined in the suit. Warren counters that Bristol's contentions that any other party would be affected by the judgment in this case are purely speculative.

Section 9-30-11 provides, in pertinent part, that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." See Burns v. Moorland Farm Condominium Association, 86 A.3d 354, 358 (R.I. 2014). "This requirement furthers the purpose of the Uniform Declaratory Judgments Act, chapter 30 of title 9, which is 'to facilitate the termination of controversies.'" Id. (quoting Abbatematteo v. State, 694 A.2d 738, 740 (R.I. 1997)). This Court has "held that the * * * provision in § 9-30-11 is mandatory." Id. (citing Thompson v. Town Council of Westerly, 487

A.2d 498, 499 (R.I. 1985)). Consequently, "[o]rdinarily 'failure to join all persons who have an interest that would be affected by the declaration' is fatal." Id. (quoting Abbatematteo, 694 A.2d at 740).

Therefore, "[b]efore any proceeding for declaratory relief is entertained, all persons who have an actual, present, adverse, and antagonistic interest in the subject matter should be before the court." 22A Am. Jur. 2d Declaratory Judgments § 204 at 859 (2013).

In Burns, 86 A.3d at 359, the plaintiff condominium owners had sued the condominium association, but not the owners of the other condominium units whose property had been improved, even though the complaint sought and the judgment specifically decreed that costs would be allocated to those owners. This Court determined, in vacating the judgment, that "the fact that these unit owners [we]re being ordered to bear an additional burden even though they were not part of the case undermine[d] the purpose of declaratory-judgment actions * **." Id.

In Abbatematteo, 694 A.2d at 740, the plaintiffs sought to enjoin the defendants from paying retirement benefits to certain individuals entitled to benefits if those individuals received disproportionately generous benefits in comparison with the plaintiff members of the retirement system. This Court ascertained that a decision in the plaintiffs' favor would consequently reduce or eliminate pension benefits for these "favored" members of the retirement system. Id. Therefore, we held that the trial justice had correctly ruled that those members were indispensable parties who should have been joined to the action. Id.

In both Burns and Abbatematteo, the parties who were not joined would have been directly affected by the judgment sought. See Sullivan v. Chafee, 703 A.2d 748, 754 (R.I. 1997) (failure to join all members of the nine-person Warwick City Council was fatal); In re City of Warwick, 97 R.I. 294, 296-97, 197 A.2d 287, 288 (1964) (failure to join all members of three

local boards meant that any declaratory judgment issued by the court would have no binding effect on the absent board members). However, in the case before us, no other persons or entities other than the parties have "an actual, present, adverse, and antagonistic interest" in the judgment. 22A Am. Jur. 2d § 204 at 859; see Westerly Residents for Thoughtful Development, Inc. v. Brancato, 565 A.2d 1262, 1265 (R.I. 1989) ("In the instant case none of the parties submitted as indispensable by [the] defendants have the type of actual and essential interest the board members had in In re City of Warwick."). The judgment from which this appeal is taken declares that RIDE calculate and disburse formula funds separately for the towns of Bristol and Warren. No other regional school district or municipality is mentioned in the trial justice's decision. In other words, no other regional school district or municipality is responsible for reimbursing Warren. Therefore, it is our opinion that the trial justice did not err when he declined to dismiss the action because other school districts had not been joined.[10]

## V

### Deference to RIDE

### A

### Standard of Review

Like the United States Supreme Court, we recognize "that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer * * *." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984). For that reason, "deference is due to that agency's interpretation of an ambiguous statute unless such interpretation is clearly erroneous or unauthorized." Unistrut Corp. v. State Department of Labor and Training, 922 A.2d 93, 99 (R.I. 2007) (citing Arnold v.

---

[10] The BWRSD and the BWRSC did not set forth any lack-of-jurisdiction argument pursuant to G.L. 1956 § 9-30-11 in their brief.

Rhode Island Department of Labor and Training Board of Review, 822 A.2d 164, 169 (R.I. 2003)). "This is true even when other reasonable constructions of the statute are possible." Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340, 345 (R.I. 2004) (citing Pawtucket Power Associates Limited Partnership v. City of Pawtucket, 622 A.2d 452, 456-57 (R.I. 1993)). "Our ultimate interpretation of an ambiguous statute, however, is grounded in policy considerations and we will not apply a statute in a manner that will defeat its underlying purpose." Arnold, 822 A.2d at 169 (citing Pier House Inn, Inc. v. 421 Corp., 812 A.2d 799, 804 (R.I. 2002)). Conversely, "when a statute is clear and unambiguous, we are not required to give any deference to the agency's reading of the statute." Unistrut Corp., 922 A.2d at 99.

**B**

**Analysis**

The defendants contend that the trial justice failed to accord proper deference to RIDE's interpretation of the statutory framework. Warren, however, counters that, because RIDE did not act under its rule-making authority in interpreting the statutes, its interpretation is not entitled to great deference.

It is not lost on us that title 16 of the Rhode Island General Laws expressly grants the power to interpret and enforce its provisions to RIDE. See G.L. 1956 § 16-1-5(9), (10). However, because we are of the opinion that the relevant section of the statutes are clear and unambiguous, see infra, we respect but are not required to defer to RIDE's reading of the Education Act and the Funding Formula Act.

Moreover, we previously have recognized that "[a]dministrative rules are divided into two classifications: legislative rules and interpretive rules." Great American Nursing Centers, Inc. v. Norberg, 567 A.2d 354, 356 (R.I. 1989) (citing Lerner v. Gill, 463 A.2d 1352, 1358 (R.I.

1983)). "Legislative rules are promulgated pursuant to the specific statutory authority provided by the Legislature." Id. (citing Lerner, 463 A.2d at 1358). Interpretive rules, on the other hand, are "not specifically authorized by a legislative enactment; rather, [they are] promulgated by an administrative agency for the purposes of guidance and definition." Id. (citing General Electric Co. v. Gilbert, 429 U.S. 125, 141-42 (1976)). "The distinction is important because an administrative regulation that is characterized as a legislative rule has the force and effect of law." Id. at 357 (citing Batterton v. Francis, 432 U.S. 416, 425 (1977)). On the other hand, "a court considering enforcement of * * * a[n interpretive] rule may substitute its own judgment for that of the administrative agency's judgment." Id. (citing Lerner, 463 A.2d at 1358).

With these distinctions in mind, the RIDE senior finance officer's memorandum from April 2014, describing RIDE's interpretation of § 16-7-16(5) (Appendix C), is not a legislative rule, rather, it is interpretive in nature and was implemented for the purposes of guidance and definition. Therefore, we are not required to give it deference and are free to substitute our own construction of the statute for that of RIDE.

## VI

## Statutory Interpretation

### A

### Standard of Review

"[T]his Court reviews issues of statutory interpretation de novo." Bucci, 68 A.3d at 1078 (citing Reynolds v. Town of Jamestown, 45 A.3d 537, 541 (R.I. 2012)). "When a statute is clear and unambiguous we are bound to ascribe the plain and ordinary meaning of the words of the statute and our inquiry is at an end." Id. (quoting Town of Burrillville v. Pascoag Apartment Associates, LLC, 950 A.2d 435, 445 (R.I. 2008)). "However, when a statute is susceptible of

more than one meaning, we employ our well-established maxims of statutory construction in an effort to glean the intent of the Legislature." Id. (quoting Town of Burrillville, 950 A.2d at 445).

**B**

**Analysis**

The defendants argue that, because the definition of "community" in § 16-7-16(5) is clear, state aid must be calculated for the district as a whole. On the other hand, Warren argues that, because § 16-7-21 (Appendix G) requires that EWAVs be calculated and allocated to each city and town, state aid must be attributed on that basis.

It is quite evident that the statutorily defined term "community" haunts this case. The defendants' arguments continuously hover around § 16-7-16(5), the definition of community. Although it is true that the definition of community includes "any city, town, or regional school district," it is important to note that this definition is somewhat malleable, depending on the context of the section in which it is used.

We will begin our analysis at § 16-7.2-3(a) (Appendix D), where the foundation education-aid formula is provided. One of the factors that make up the formula is the district state-share ratio, which is calculated pursuant to § 16-7.2-4 (Appendix E). Section 16-7.2-4(a) then directs the reader to § 16-7-20 (Appendix F). Section 16-7-20 annunciates the formula for the state share for each community. The BWRSD and the BWRSC concede that "pursuant to [§] 16-7-21 an EWAV for each city or town must be generated and is based upon the value of real and personal property of such city or town." However, the BWRSD and the BWRSC urge that, even though § 16-7-21 requires an EWAV to be calculated separately for each city and town, § 16-7-20 uses the EWAV of the "community" in the calculation of the state share ratio, and that the statutory definition of community includes regional school districts.

- 17 -

Thoughtful as it may be, we are not persuaded by this reasoning. The controlling factor from § 16-7-20 is "v," the adjusted EWAV for the community. The BWRSD and the BWRSC would have us stop our analysis at § 16-7-20; however, stopping the analysis at that point would, in our judgment, be premature. Section 16-7-20 further defines "v" pursuant to § 16-7-21(3), and although subsection (3) refers to the EWAV for each <u>community</u>, it cites to subsection (2) of § 16-7-21 and says that "[t]he equalized weighted assessed valuation for each <u>community</u> as allocated or apportioned in accordance with subdivision (2) of this section * * *." (Emphasis added.) And subsection (2) of § 16-7-21 specifically says, "[t]he equalized weighted assessed valuation for <u>each city and town</u> shall be allocated to the particular <u>city or town</u> * * *." (Emphases added.)

Moreover, it is our opinion that, when closely read, the language employed is clear and unambiguous. Therefore, we are bound to assign the plain and ordinary meaning of "each city and town." The plain and ordinary meaning of this phrase does not include "regional school district." Consequently, when the entire statute is read as a whole, as it must be, the determination of state education aid is based on the values of each city and town, not the regional school district. The statutes do not articulate or even suggest any joining of EWAVs for separate cities and towns to create a regional EWAV, as defendants maintain. It is our opinion that, in essence, RIDE added an extra step to its process by calculating state aid on a straight per-pupil basis, a superfluous exercise that is not provided for in either the Education Act or the Funding Formula Act.

Because we have determined the statutes to be clear and unambiguous; it is, therefore, unnecessary for us to delve into the Legislature's intent. However, we pause to note that, in enacting the statutory scheme, the Legislature has specifically provided a statement of purpose

and legislative findings.  Importantly, the intent of the Funding Formula Act is "to ensure educational opportunity to each pupil in each city or town on substantially equal terms."  Section 16-7.2-1(b) (emphases added).  Our decision directly aligns with the intent of the Legislature, in that it recognizes the impact on poorer cities and towns that the Legislature sought to protect when determining state education aid.  To hold otherwise would undo RIDE's city- and town-specific calculations and would defeat the underlying purpose of the Legislature in enacting the Education Act and the Funding Formula Act.  It would allow Bristol, which is more affluent than Warren, to reap the benefits of the extra aid that Warren receives from these two statutes because of its more precarious finances.  We decline to construe the legislation in a way that would lead to such a result.

## VII

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court.  The record shall be remanded to that court.

**Appendix A**

General Laws 1956 § 16-7-15 provides: "The purpose of §§ 16-7-15 to 16-7-34 is to provide a quality education for all Rhode Island youth by requiring a minimum per pupil expenditure level, by encouraging school committees to provide superior education beyond this minimum, by identifying fiscal responsibilities of school committees, by further improving the efficiency of our school systems through encouraging small school districts to combine into larger, more efficient regionalized units, and by incorporating the many various state aids into one comprehensive program."

**Appendix B**

General Laws 1956 § 16-7.2-1(b) provides: "The intent of this chapter is to promote a school finance system in Rhode Island that is predicated on student need and taxpayer ability to pay. A new school funding system in the state should promote educational equity for all students and reduce the reliance on the property tax to fund public education. This legislation is intended to ensure educational opportunity to each pupil in each city or town on substantially equal terms. Adequate per pupil support will be provided through a combination of state school aid and local education property tax levies."

**Appendix C**

General Laws 1956 § 16-7-16(5) provides in pertinent part: "'Community' means any city, town, or regional school district established pursuant to law and/or the department of children, youth, and families; * * * provided, however, that the member towns of the Chariho regional high school district * * * shall constitute separate and individual communities for the purpose of determining and distributing the foundation level school support * * *."

**Appendix D**

General Laws 1956 § 16-7.2-3(a) provides: "Beginning in the 2012 fiscal year, the following foundation education-aid formula shall take effect.  The foundation education aid for each district shall be the sum of the core instruction amount in subdivision (a)(1) and the amount to support high-need students in subdivision (a)(2), which shall be multiplied by the district state-share ratio calculated pursuant to § 16-7.2-4 to determine the foundation aid."

**Appendix E**

General Laws 1956 § 16-7.2-4(a) provides: "For each district, the state's share of the foundation education aid calculated pursuant to § 16-7.2-3(a) shall use a calculation that considers a district's revenue-generating capacity and concentration of high-need students. The calculation is the square root of the sum of the state-share ratio for the community calculation, pursuant to § 16-7-20, squared plus the district's percentage of students in grades PK-6 in poverty status squared, divided by two."

**Appendix F**

General Laws 1956 § 16-7-20(a) provides: "For each community the state's share shall be computed as follows: Let

"R = state share ratio for the community.

"v = adjusted equalized weighted assessed valuation for the community, as defined in § 16-7-21(3).

"V = sum of the values of v for all communities.

"m = average daily membership of pupils in the community as defined in § 16-7-22(3).

"M = total average daily membership of pupils in the state.

"E = approved reimbursable expenditures for the community for the reference year minus the excess costs of special education, tuitions, federal and state receipts, and other income.

"Then the state share entitlement for the community shall be RE where

"$R = 1 -- 0.5\ vM/(Vm)$ through June 30, 2011, and $R = 1 -- 0.475\ vM/(Vm)$ beginning on July 1, 2011 and thereafter.

"Except that in no case shall R be less than zero percent (0%)."

**Appendix G**

General Laws 1956 § 16-7-21 provides: "On or before August 1 of each year the division of property valuation within the department of revenue shall determine and certify to the commissioner of elementary and secondary education the equalized weighted assessed valuation for each city and town in the following manner:

"(1) The total assessed valuations of real and tangible personal property for each city and town as of December 31 of the third preceding calendar year shall be weighted by bringing the valuation to the true and market value of real and tangible personal property. The total assessed valuations of real and tangible personal property for all cities and towns shall be applied to the true and market valuations of the property for all cities and towns and the resulting percentage shall determine the average throughout the state. This percentage applied to the sum of the total true and market value of real and tangible personal property of each city and town shall be the equalized weighted assessed valuation of each city and town.

"(2) The equalized weighted assessed valuation for each city and town shall be allocated to the particular city or town, and in the case of a regional school district which does not service all grades, except the Chariho regional high school district, the commissioner of elementary and secondary education shall apportion that proportion of the equalized weighted assessed valuation of the member cities or towns which the average daily membership serviced by the regional school district bears to the total average daily membership, and the equalized weighted assessed valuation of the member cities and towns shall be appropriately reduced.

"(3) The equalized weighted assessed valuation for each community as allocated or apportioned in accordance with subdivision (2) of this section shall be adjusted by the ratio which the median family income of a city or town bears to the statewide median family income

as reported in the latest available federal census data. The total state adjusted equalized weighted assessed valuation shall be the same as the total state equalized weighted assessed valuation."

(Emphases added.)

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Town of Warren et al. v. Bristol Warren Regional School District et al. and Town of Bristol by and through its Town Council and its Town Treasurer, Julie Goucher, As Interested Party. |
| **Case Number** | No. 2015-363-Appeal. No. 2015-364-Appeal. (PC 14-1628) |
| **Date Opinion Filed** | May 12, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Louis M. Matos |
| **Attorney(s) on Appeal** | For Plaintiffs: Anthony DeSisto, Esq. Peter F. Skwirz, Esq.  For Defendants:  Andrew D. Henneous, Esq. Michael J. Polak, Esq. Gina A. DiCenso, Esq. Michael A. Ursillo, Esq. |