# CONSUMERS' COMPANY, LIMITED, *v.* HATCH.

## ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 184.   Argued March 4, 1912.—Decided April 1, 1912.

When prior to the granting of a charter to a public service corporation it has been clearly settled both by statute law and decisions that such a corporation must perform certain duties, the compelling of such performance does not amount to an impairment of the charter contract, nor does it deprive the corporation of its property without due process of law.

Although a public service corporation may not under its charter be required to extend its facilities in certain quarters, if it does so voluntarily, it must render the service for which it obtained its charter to those within reach of its facilities without distinction of persons.

A judgment of the state court of Idaho, compelling a water company to furnish connection at its own expense to one residing on an ungraded street in which it had voluntarily laid its mains, although not required so to do by its charter, *held* not to have impaired the charter contract of the water company or to have deprived it of its property without due process of law, it appearing that under decisions of the highest court of the State made prior to the charter, the cost of connection was to be borne by the water company.

17 Idaho, 204, affirmed.

THE facts, which involve the construction of the charter of a public service corporation in Idaho and its rights and obligations thereunder, are stated in the opinion.

*Mr. Myron A. Folsom,* with whom *Mr. Edward S. Elder* and *Mr. Robert H. Elder* were on the brief, for plaintiff in error

*Mr. Eugene V. Boughton,* with whom *Mr. Frank W. Reed* was on the brief, for defendant in error, submitted.

Mr. Chief Justice White delivered the opinion of the court.

Omitting reference to matters not pertinent to the alleged Federal questions relied upon, the facts are these: Although it was optional with it to do so, the plaintiff in error, a water supply corporation, operating under a franchise granted in 1903, laid a water main in Third street, an ungraded street within the corporate limits of the then village—now city—of Cœur d'Alene, Idaho. While the company was supplying residents on the street with water for domestic use, upon payment of the regular monthly rates established by the Water Commission provided for by the statutes of Idaho, Albert L. Hatch, defendant in error, erected a dwelling upon a lot situated on the street and laid a water pipe to the curb in front of his property. He then applied to the Water Company to connect the pipe at the curb line with its service main, so that a regular supply of water might be obtained. The Water Company, however, declined to make the desired connection because of the refusal of Hatch to pay, as required by the regulations of the company, $8.50, the cost of making the connection, or to comply with alternative regulations adopted for the purpose of enabling the Water Company to recover such cost. This action in mandamus was then commenced in the Supreme Court of Idaho and culminated in a judgment in substance finding the regulations requiring a consumer to pay for service connections unreasonable and ordering the Water Company to make the connection at its own cost and to supply water to the premises of Hatch upon payment of the established monthly rate. 17 Idaho, 204. This writ of error was then prosecuted upon the assumption that rights of the Water Company, protected by the Constitution of the United States, had been wrongfully invaded.

The grounds for the claim in question are in substance

that as the Water Company was not required by its charter in express terms to make a service connection and the benefits of such connection would inure solely to the house owner, to compel the Water Company to bear the cost of the connection would amount to a confiscation of its property in violation of the due process clause of the Fourteenth Amendment and also would be to impair the obligation of its contract. A further claim of impairment of contract is based upon the contention that as it was optional with the Water Company under its franchise to lay mains in ungraded streets there was no duty to supply water from a main voluntarily placed in an ungraded street.

The contentions are devoid of merit. The charter of the company was construed by the court below in connection with the statutes in force at the time of the grant of the franchise in the light of the construction given to those statutes in decisions made prior to such grant. We excerpt in the margin [1] a passage from the opinion in one of those cases.

---

[1] In *Pocatello Water Company* v. *Standley* (1900), 7 Idaho, 155, considering obligations of a water supply company and construing § 2712 of 1887 Revised Statutes of Idaho, substantially reënacted in Revised Code of Idaho 1910 as § 2840, the Supreme Court of Idaho said (p. 159):

"Under the said franchise the respondent has been granted the right to lay its mains and pipes, over, along, and under, the streets, alleys, and highways of said city for the purpose of supplying said city and its inhabitants with a sufficiency of pure water. It had the authority to lay all of the mains and pipes in said streets and alleys necessary to accomplish the purposes for which said franchise was granted. It is obliged to lay its mains and pipes in said streets and alleys, and deliver water to the consumers at its franchise limits, and to the line of the premises of the consumer, if such premises border on said franchise limits. The respondent has been granted a valuable right—that of laying its mains and laterals in the streets and alleys of the city—in consideration that it will furnish water to said city and its inhabitants. The company is under obligation to lay its pipes in the streets and alleys so as to make the water accessible to the citizen

By thus interpreting the charter by applying the settled meaning of the statutes which had been announced at the time the charter was granted to the Water Company, the court held that it was the duty of the company under its charter to make the service connections for Hatch at its own cost. This was based upon the view that as it was clearly settled by both the statute law and decisions at the time the charter was granted that it was the duty of the Water Company to make service connections and its further duty being to supply water to consumers by necessary implication the charter imposed the obligation to pay the cost of the service connection which it was incumbent upon the company to make.

That the construction thus placed upon the charter by the court below in the light of the state of the law at the time of its adoption did not amount to an impairment of the obligations of the charter by subsequent legislation is, we think, too clear for anything but statement. That the mere fact of holding that an obligation would be implied to pay for the doing of work to enable the corporation to perform a duty when the duty to do such work was clearly the result of the state law and decisions thereon at the time the charter was granted did not amount to confiscation, and the consequent taking of the property of the corporation without due process of law in violation of the Fourteenth Amendment is also, we think, so obvious as not to necessitate further consideration of the proposition.

As respects the claim based upon the clause of the charter which provided that the Water Company should not be "required" to extend its distributing system in any ungraded street or alley within the then village (now city) of Cœur d'Alene, even if it were possible to indulge in

---

for his private use. It is given the right, within its franchise limits, to lay all pipes and make all connections with its mains and laterals. . . . Neither has the citizen any right to enter within the franchise limits of the company, and in any manner interfere with its mains and pipes."

the hypothesis that there was subsequent legislation, we think there is nothing supporting the claim of impairment of contract, because the Supreme Court of Idaho was clearly right in deciding that no contract provision was impaired, since the Water Company had voluntarily laid its main in the ungraded street in question and was supplying water from such main to residents on the street, and its duty was to supply water "without distinction of persons."

*Affirmed.*