HIGHWAY LUMBER & SUPPLY CO. *v.* COMMISSIONERS OF WEST HELENA WATER COMPANY.

5-2212                                          339 S. W. 2d 609

Opinion delivered November 7, 1960.

*Dinning & Dinning,* for appellant.

*Eugene L. Schieffler* and *James P. Baker, Jr.,* for appellee.

JIM JOHNSON, Associate Justice. This case involves an action brought by appellant, Highway Lumber & Supply Company, seeking a mandatory injunction against appellee, Commissioners of West Helena Water Company, requiring it to install water meters and furnish water for two lots in Westwood Subdivision, a housing development of appellant, now situated within the city limits of West Helena.

In 1955 the appellant acquired twenty acres of land and platted the same into fifty-seven lots and dedicated it as Westwood Subdivision, the North line of which is adjacent to Highway No. 20, where appellee maintains a 6″ water main with an ample supply of water. The first development made by the appellant consisted of

commercial buildings along said North end of the property which appellee serviced from its water mains in the adjacent highway without question.

Appellant, desiring the development of the lots located behind the highway front commercial property for housing, and finding that water to said lots (which were at the time of the dedication of said subdivision located outside the city limits of West Helena) could not be provided directly from the water main in Highway 20, as was done for the front commercial property, sought to and did enter into a contract with appellee on November 18, 1955, whereby water was to be furnished these lots.

Under this contract appellant was required to deposit the sum of $500 for the construction of a 2″ line into the subdivision from the 6″ main in the highway. The contract provided that the appellant was permitted to build houses on a designated number of lots and upon completion of five houses he was to receive a refund of his original deposit. Appellant and appellee both complied with the terms of that contract and water was furnished to the original five houses. Five additional houses were built by the appellant in the subdivision. These houses were situated upon lots designated in the contract and were also furnished water.

Following the construction of these houses, appellant undertook to further develop the subdivision by building on two adjoining lots which were not included in the contract. These were lots No. 19 and No. 11.

On April 8, 1958, Rolla St. John, to whom the plaintiff had sold Lot No. 19, applied for a water meter for the home on said lot and this was refused. About the same time the plaintiff was completing the home on Lot No. 11 and a water meter for this residence was also denied. The denials of these two water meters brought on this lawsuit. The plaintiff says that the refusal to furnish water to these two lots constitutes an unlawful and unwarranted discrimination; that unless the defend-

ant is enjoined he will suffer an irreparable injury and is, therefore, entitled to an injunction.

The record reveals that on or about May 21, 1957, and after several years of study, and some 18 months after the execution of the above limited contract for water service, the water company adopted a Water Main Extension Policy. All of the subdivision developers in West Helena have abided by this policy or expressed a willingness to abide by it and the policy has been applied indiscriminately to all subdivision developers since the adoption of the policy.

Under this policy the Contract For Main Extension for a real estate development requires the subdivision developer to deposit with the water company a sum of money which represents the estimated cost of constructing and installing the proposed main extension. If, after the work is finished, the cost proves to be less than the deposit, the difference is immediately refunded to the developer. Paragraphs four and five are most important to the developer because they provide for the repayment to him of his deposit. Under paragraph four the water company would refund to him at the end of the first year of occupancy of each house three and one-half times the gross amount of water revenue received from each house. There is only one refund to each house in the subdivision. The minimum amount of actual gross revenue for each house shall not be less than Thirty Dollars and the maximum amount shall not exceed One Hundred Dollars. The City of West Helena pays the water company Fifty Dollars per year for each fire plug in town and the water company gives a developer credit for each fire hydrant in the subdivision by refunding to him three and one-half times the revenue from the one fire plug for one year only or $175.

Under paragraph six, their contract is only in effect for six years from the date the main extension is placed in service. Applying the water main extension policy and the contract to the balance of the Westwood Sub-

division not covered under the original limited water service contract, the following facts developed:

Mr. Gene Cowsert, Manager of the Water Company, testified that the average gross water revenue for each house in Westwood Subdivision amounted to $36 per year. Three and one-half times $36 x 34 houses to be built on additional lots to be serviced equals $4,284, and this sum plus $175 for the fire hydrant equals $4,459. The revised detailed estimate of cost amounted to $4,493. (The first estimate was $4,708.18 and later on was reduced to $4,493.68.)

Mr. Cowsert testified that the appellant would have been entitled to receive all of his money back when he had built 34 houses. Even appellant testified he would have received all of his deposit back in six years.

Mr. Waters, owner-appellant, refused to sign the above contract and in order to obtain water for his subdivision he deposited the sum of $3,370.11 (which was the amount of money required for the construction of the mains he wanted to build at that time) under protest. The water company then constructed the water mains in accordance with the requirements of the Arkansas State Board of Health which provided a six inch main in the western part of the subdivision rather than a two inch main as desired by appellant.

Appellee contends that they refused to provide water to lots No. 11 and No. 19 for several reasons of which the main ones are as follows:

1. Because a two-inch main extended throughout the subdivision would not provide sufficient water pressure for adequate service for the development of the entire subdivision.

2. Because of the Water Extension Main Policy adopted on or about May 21, 1957.

3. Because the Arkansas State Department of Health recommended a six-inch main leading from State

Highway No. 20 on the West side of the subdivision to a point . . . (designated in the subdivision). This was purely for the domestic use of water from the standpoint of the Board of Health.

4. Because the Arkansas Inspection and Rating Bureau approved a six-inch main in order to provide sufficient water pressure for adequate fire protection.

5. Because it was necessary to protect the financial stability of the West Helena Water Company.

In support of their refusal, appellee further contends in their argument which was based upon the record that: ''Appellant states that for the purposes of this lawsuit it is interested only in these two lots, however, its attorney says 'that if we build right next to it we are entitled to it.' On the plat of Westwood Subdivision the distance from the south end of the original two inch main to the south part of the subdivision, around the bend or loop and thence north to the state highway on the West side of the subdivision is approximately twenty-five hundred fifty feet which lacks approximately one hundred eighty feet of being half a mile. The continuous extension of the two-inch line through the subdivision would be of great advantage to appellant in saving it money but it would be of great disadvantage to the people to whom it sold homes and would also create a huge burden on the water company when later on it would have to come back and duplicate the two-inch main with a six-inch main a distance of approximately six-hundred fifty feet. Without a fire plug in Westwood Subdivision all of the citizens in West Helena would have to pay higher fire insurance premiums. In short, if the position of the appellant were upheld then there would, in fact, be discrimination against the water company, other subdivision developers and the people of West Helena generally.''

The learned Chancellor agreed that appellee's contentions were valid and refused to grant the mandatory injunction prayed for. On appeal, appellant relies prin-

cipally upon the following cases: *City of Malvern* v. *Young,* 205 Ark. 886, 171 S. W. 2d 470; *Pine Bluff Corporation* v. *Toney,* 96 Ark. 345, 131 S. W. 680; *Consumers Company* v. *Hatch,* 224 U. S. 148, 32 S. Ct. 465, 56 L. Ed. 703. After careful review on trial *de novo* we find that the cited cases do not here sustain the points urged by appellant for reversal. To the contrary, however, we do find in the *City of Malvern* v. *Young, supra,* quoted from Pond's Law of Public Utilities, 4th Ed. Vol. 1, § 275, the following:

"Where the location of the prospective customer is unusual and the conditions of furnishing him service are peculiar because of the distance he is removed from the center or thickly populated district of the municipality or because of the sparsely settled condition of his own neighborhood, it is only reasonable that the public service corporation providing him with its service be permitted to impose other and different conditions from those applicable to a customer centrally located in the thickly populated district of the municipality. . . . And while the public service corporation can not act arbitrarily or discriminate among its customers, present or prospective, where similarly situated, by way of favoring one customer of a class or one class over others a distinction may be made between different customers or classes of customers on account of location, amount of consumption, or such other material conditions which distinguish them from each other or from other classes."

According to Professor Pond the water company could have made a distinction between different customers or classes of customers on account of location (Westwood subdivision was located in the Western part of West Helena and at the time of the Dedication deed the lots involved in the first contract were not even in the city limits of West Helena), amount of consumption or such other material conditions which distinguishes one customer from another.

The water company denies that there was any discrimination whatsoever against the plaintiff or anyone else. Gene Cowsert, Manager of the Water Company, testified that all other subdivision developers in West Helena had either abided by the policy or expressed a willingness to abide by it and that the policy had been applied indiscriminately to all subdivision developers since the policy was adopted. There was no evidence to the contrary. In fact, the owner-appellant testified as follows:

"Q. Have you reviewed the policy?

"A. Yes, sir; I have read it.

"Q. Do you think it is a reasonable policy?

"A. I don't see too much wrong with it. . . ."

It is a well established rule that the burden of proof is upon the plaintiff to prove by a preponderance of the evidence that the Water Company acted arbitrarily or abused their discretion. This the appellant failed to do.

Affirmed.