June 16, 2021

**Supreme Court**

No. 2019-95-Appeal.
(NC 16-231)

Middle Creek Farm, LLC, et al.     :

v.     :

Portsmouth Water & Fire District et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Middle Creek Farm, LLC, et al.          :

v.                              :

Portsmouth Water & Fire District et al.   :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  The defendant, Portsmouth Water & Fire District (PWFD or the district), appeals from a judgment entered in favor of the plaintiffs, Middle Creek Farm, LLC (Middle Creek Farm); Middlecreek, LLC; Douglas W. Politi; and Catherine M. Politi (plaintiffs).[1]  PWFD contends that the hearing justice erred in partially granting Middle Creek Farm's motion for summary judgment in its declaratory-judgment action.

---

[1] Middle Creek Farm filed the instant action. The three other plaintiffs were later joined for all parties in interest to be part of the declaratory-judgment action. *See* G.L. 1956 § 9-30-11.  Those plaintiffs have ownership interests in the subdivision lots in contention in this case.  Of the named plaintiffs in this case, only Middle Creek Farm has filed briefs in this Court.  The defendant City of Newport has not filed a statement on appeal and did not oppose Middle Creek Farm's efforts to connect to the PWFD water system.

On appeal, PWFD contends that the hearing justice erred in deciding that the three lots at issue are part of PWFD's coverage area under its charter. PWFD asserts that the Superior Court should have given deference to PWFD's interpretation of its charter. PWFD additionally argues that the plaintiffs failed to exhaust their administrative remedies and failed to join indispensable parties. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

This matter concerns an eleven-lot subdivision that straddles the border between Portsmouth and Middletown. Seven lots have homesites located in Portsmouth, and four lots have homesites located in Middletown. Three of the four lots that have homesites in Middletown (sub-lots 1, 2, and 4) contain a portion of land located in Portsmouth. One of the four lots has no land in Portsmouth and is entirely in Middletown (sub-lot 3).[2]

The subdivision was approved by the planning boards of both Middletown and Portsmouth. In May 2016, PWFD petitioned the Portsmouth Planning Board to reopen its final approval of the so-called "Middle Creek subdivision." At the reopened hearing, PWFD requested that Middle Creek Farm be required to extend a

---

[2] The Superior Court denied Middle Creek Farm's motion for summary judgment for sub-lot 3, indicating that the lot was not entitled to receive water from PWFD because it had no land in Portsmouth. Middle Creek Farm has decided not to pursue any further relief for sub-lot 3.

water main from an adjoining street in Portsmouth that would pass in front of all of the lots in the subdivision and connect to another water main on another street in Portsmouth to make a full loop, which would benefit PWFD by improving water flow for PWFD water mains.

Middle Creek Farm filed suit in Superior Court, originally intended to be a so-called "friendly suit," at the suggestion of PWFD, in order to stimulate the City of Newport's agreement to the water tie-in as described. The City of Newport provides water to the Town of Middletown. On July 19, 2016, PWFD held a meeting at which the water main extension was formally approved and accepted. Shortly thereafter, the City of Newport agreed to allow the tie-in for the lots located partially or wholly in the Town of Middletown. Subsequently, PWFD refused to permit Middle Creek Farm to connect the four sub-lots that have houses located in Middletown to the water main; and, as stated *supra*, three of those lots contain property in Portsmouth.

Middle Creek Farm's action requested declaratory and injunctive relief. It sought a declaration that PWFD was required to provide water services to the subdivision lots.[3] Subsequently, the other party-plaintiffs were joined in the case.

---

[3] PWFD filed an answer admitting that its purpose is obtaining and maintaining a supply of water for the inhabitants of Portsmouth.

In due time, Middle Creek Farm filed a motion for summary judgment, to which PWFD objected.

At a hearing on the motion for summary judgment, Middle Creek Farm argued that sub-lots 1, 2, and 4 were entitled to water service from PWFD because each of those lots had a portion of its property in Portsmouth that was taxed by both the Town of Portsmouth and PWFD, and that the payment of taxes triggered the obligation to provide water to those lots. Middle Creek Farm also argued that neither the language of PWFD's charter nor that of G.L. 1956 § 46-15-2 prevented the lots that have a portion of property in Portsmouth from being entitled to connect to the PWFD water system.[4] Middle Creek Farm further contended that, in accordance

---

[4] General Laws 1956 § 46-15-2, entitled "Approval of public water supply facilities," provides in pertinent part as follows:

> "(a) No municipal water department or agency, public water system, including special water districts or private water company, engaged in the distribution of water for potable purposes shall have any power:
>
> "* * *
>
> "(3) To extend its supply or distribution mains into a municipality or special water district wherein it has not heretofore legally supplied water;
>
> "* * *
>
> "(5) To extend the boundaries of a special water district; or

with § 46-15-2, PWFD may "extend its supply or distribution mains" and "supply water" outside its district because it had legally supplied water to a location in Middletown in the past pursuant to a stipulation entered in the Newport County Superior Court case of *Brennan v. Esposito*, NC-85-264.[5]

PWFD argued at the hearing that it was prohibited from providing water to the lots in question because those lots were not in its area of coverage as outlined in Section 5 of its charter. According to PWFD's interpretation of its charter, it was required to provide water only for any property that has a building located within its coverage area in the town of Portsmouth. PWFD also contended that its charter

---

"(6) To supply water in or for use in any other municipality or civil division of the state which owns and operates a water supply system therein, or in any duly organized special water district supplied with water by another municipal water department or agency, special water district, or private water company, until the municipal water department or agency, special water district, or private water company has first submitted the maps and plans therefor to the director of the department of health, the state planning council and the board, as hereinafter provided, and until the water resources board, after receiving the recommendations of the director of the department of health and the division of statewide planning, shall have approved the recommendations or approved the recommendation with modifications as it may determine to be necessary; provided, however, this subsection shall not apply to any area presently served by any municipal water department or agency, or special water district."

[5] The *Brennan* stipulation was entered into in 1985. The stipulation stated that PWFD would provide water to lots wholly located in Middletown.

required that the actual residence be located within Portsmouth to be eligible for water service and that § 46-15-2 prohibited water service beyond the boundaries of PWFD, at least until various state agencies gave approval, which had not occurred. After further argument, the hearing justice continued the matter for two months for additional discovery and supplemental memoranda.

PWFD later filed a motion to dismiss plaintiffs' action for the failure to join indispensable parties. PWFD asserted in its papers and at a subsequent hearing that owners of any lot that straddled the Middletown-Portsmouth line were indispensable parties in this case. Middle Creek Farm disagreed, arguing that the interests of those property owners were speculative.

When pressed at the continued hearing on the issue of Middle Creek Farm's motion for summary judgment, PWFD argued that paying real estate taxes to PWFD does not automatically qualify a property owner to connect to the water main and receive a water supply from PWFD. PWFD contended that, to the extent that there is any obligation, it was obligated only to provide water for inhabitants of its district. PWFD suggested that several factors could determine whether an owner qualified as an inhabitant of the district, including whether the property owner has a house within Portsmouth, whether the owner is eligible to vote in Portsmouth, whether the property has a Portsmouth address, and whether the children on the property are eligible to attend Portsmouth public schools. PWFD further contended that

-6-

summary judgment was not appropriate because consideration of those factors involved factual determinations. PWFD also argued that great weight must be given to its interpretation of the term "inhabitants" in its charter.

Middle Creek Farm again argued, citing cases from other jurisdictions, that the payment of taxes to PWFD by the lot owners triggered PWFD's obligation to provide water to them. *See Hatch v. Consumers' Co., Ltd.*, 104 P. 670, 676 (Idaho 1909), *aff'd*, 224 U.S. 148 (1912) (concluding that with the power to tax comes the duty to provide water to the property owners). Middle Creek Farm disagreed with PWFD's assertion that water service was limited to a narrow interpretation of the term "inhabitants" under Section 5 of PWFD's charter. Middle Creek Farm noted that commercial properties and recreational properties receive water from PWFD despite not having inhabitants.

After taking the matter under advisement, the hearing justice issued a written decision on Middle Creek Farm's motion for summary judgment and PWFD's motion to dismiss for the failure to join indispensable parties. As to Middle Creek Farm's request for declaratory relief, the hearing justice indicated that the meaning of the term "inhabitants" under Section 5 of PWFD's charter was the central issue in the case. Section 5 provides that PWFD is authorized to distribute water "to the inhabitants of the district[.]" In reading other portions of Section 5, the hearing justice decided that the term "inhabitants" should be interpreted expansively. He

noted that Section 5 also stated that "the owner of any house, building, tenement or estate shall be liable for the payment of the water rates and charges fixed by the district[.]" The hearing justice decided that this reference to an "estate" and other references to real estate in other sections of the charter indicated that PWFD was obligated to provide water service to owners of real estate in the district who pay taxes to the district. The hearing justice stated that a contrary interpretation, particularly in light of the district's broad power to tax contained in Section 10 of its charter, would lead to the absurd result of PWFD not being obligated to supply water to taxable businesses or farmland that do not have residences. Therefore, he decided that sub-lots 1, 2, and 4 were entitled to water from PWFD and granted summary judgment as to those lots.

The hearing justice also decided that § 46-15-2 did not prevent PWFD from distributing water to sub-lots 1, 2, and 4; he reasoned that those lots were within the district's coverage area because they contained taxable land located in Portsmouth. He stated that PWFD could pursue any administrative remedies it might have with the Rhode Island Water Resources Board (the board).

Finally, the hearing justice denied PWFD's motion to dismiss for failure to join indispensable parties. The hearing justice noted that PWFD had not demonstrated that the owners of fifty-three properties straddling the Middletown-Portsmouth border had an interest in the judgment of this case or would

-8-

be negatively affected by the case. The hearing justice indicated that the interest of those property owners was speculative. He also stated that PWFD had not demonstrated that the interest of those property owners was inextricably tied to the case. The hearing justice further stated that joining those property owners to the case was not practicable, because some of the properties in question had multiple owners.

An order implementing the hearing justice's decision was entered on August 20, 2018. The order provided that Middle Creek Farm's motion for summary judgment was granted in part and declared that sub-lots 1, 2, and 4 had the right to connect to PWFD's water system. Final judgment was entered on October 31, 2018.[6] PWFD timely appealed.

On appeal, PWFD argues that the Superior Court erred in deciding that sub-lots 1, 2, and 4 are within the district's coverage for distributing water. PWFD asserts that the Superior Court interpreted the term "inhabitants" in PWFD's charter in an expansive manner contrary to its plain meaning and failed to give deference to PWFD's interpretation of the term. PWFD also argues that the Superior Court should have considered additional factors including the house address, eligibility to

---

[6] The plaintiffs filed a motion to voluntarily dismiss all remaining equitable claims, to which PWFD did not object. On August 31, 2018, the hearing justice dismissed plaintiffs' remaining claims. The plaintiffs also sought litigation expenses, which the hearing justice denied.

vote, access to public schools, real estate taxes, and the provision of municipal services in interpreting the term "inhabitants." PWFD further argues that plaintiffs failed to exhaust their administrative remedies before the board pursuant to § 46-15-2, noting that this statute applies to instances when water is provided outside of a water district's boundaries. PWFD additionally argues that the owners of the fifty-three properties straddling the Middletown-Portsmouth line should have been joined as indispensable parties.

In response, Middle Creek Farm argues that the Superior Court correctly decided that property located within Portsmouth that is liable for taxes to PWFD is entitled to receive water from PWFD. Middle Creek Farm indicates that the term "inhabitants" under the PWFD charter could not be limited to residents, as this would prevent farms and commercial entities from receiving water. Middle Creek Farm maintains that limiting "inhabitants" to residents would therefore be irrational. Middle Creek Farm notes that § 46-15-2 does not apply to areas already served by PWFD and that Middletown lots were served by PWFD in the *Brennan* case. Finally, Middle Creek Farm argues that the interests of other lots straddling the Middletown-Portsmouth border are speculative, and, therefore, the owners of those lots are not indispensable parties.

## Standard of Review

"This Court reviews a decision granting a party's motion for summary judgment *de novo*." *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 598 (R.I. 2019) (quoting *DeLong v. Rhode Island Sports Center, Inc.*, 182 A.3d 1129, 1134 (R.I. 2018)). "Examining the case from the vantage point of the trial justice who passed on the motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment." *Id.* (quoting *Sullo v. Greenberg*, 68 A.3d 404, 406-07 (R.I. 2013)). "Although summary judgment is recognized as an extreme remedy, to avoid summary judgment the burden is on the nonmoving party to produce competent evidence that proves the existence of a disputed issue of material fact." *Id.* (deletion omitted) (quoting *Sullo*, 68 A.3d at 407).

## Discussion

### Hearing Justice's Grant of Summary Judgment

PWFD first maintains that the Superior Court interpreted the term "inhabitants" as contained in PWFD's charter in an expansive manner contrary to its plain meaning and failed to give deference to PWFD's interpretation of the term.[7]

---

[7] PWFD states that, in accordance with its interpretation of its charter, it provides water to all properties with building sites located within the district.

"This Court long has abided by the principle that, 'when called upon to construe the provisions of a municipal charter, the usual rules of statutory construction are employed.'" *Felkner v. Chariho Regional School Committee*, 968 A.2d 865, 870 (R.I. 2009) (brackets and deletion omitted) (quoting *Town of Johnston v. Santilli*, 892 A.2d 123, 127 (R.I. 2006)). If the language of a statute is unambiguous, this Court applies the plain and ordinary meaning of that language to the statute's provisions. *Raiche v. Scott*, 101 A.3d 1244, 1248 (R.I. 2014). However, if there is an ambiguity in the statute, this Court will employ the maxims of statutory construction to discover the intent of the Legislature. *Unistrut Corporation v. State Department of Labor and Training*, 922 A.2d 93, 98-99 (R.I. 2007). A statute is ambiguous if one of its words or phrases is susceptible to more than one meaning. *Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I. 2011). "We have recognized that 'it is the accepted rule that the provisions of city charters should be construed so as to give, so far as possible, reasonable meaning and effect to all parts of the section in question.'" *Felkner*, 968 A.2d at 870 (brackets omitted) (quoting *Stewart v. Sheppard*, 885 A.2d 715, 720 (R.I. 2005)). "We presume that the General Assembly intended to attach significance to every word, sentence and provision of a statute." *Retirement Board of Employees' Retirement System of State v. DiPrete*, 845 A.2d 270, 279 (R.I. 2004).

The disputed Section 5 of PWFD's charter states as follows:

> "Section 5. The district is hereby authorized to obtain and maintain for the district a supply of water for the extinguishing of fire, and for distribution to the inhabitants of the district, for domestic use *and for other purposes*[.] * * * The district may also furnish water to the inhabitants of the town of Portsmouth outside of the boundaries of the district.[8] If the district shall undertake to distribute the water so obtained, it shall have the exclusive right thereto and may maintain an action against any person for using the same without the consent of the district, and may regulate the distribution and use of said water within and without said district, and from time to time fix water rates and charges for the water and water facilities furnished by the district, which may be based upon the quantity of water used or the number and kind of water connections made or the number and kind of plumbing fixtures installed on the estate or upon the number or average number of persons residing *or working in or otherwise connected therewith* or upon any other factor affecting the use of or the value or cost of the water and water facilities furnished or upon any combination of such factors, and the owner of any *house, building, tenement or estate* shall be liable for the payment of the water rates and charges fixed by the district; and such water rates, and charges shall be a lien upon such *house, building, tenement, and estate* in the same way and manner as taxes assessed on real estate are liens, and if not paid as required by the district, shall be collected by said district in the same manner that taxes assessed on real estate are by law collected." Portsmouth Water and Fire District Charter Sec. 5 (as amended 1965) (emphasis added).

---

[8] Section 1 of the charter excludes portions of Portsmouth, such as the islands outside the perimeter of Aquidneck Island and the United States naval base, which are not relevant to this case.

Black's Law Dictionary defines "inhabit" as "[t]o dwell in; to occupy permanently or habitually as a residence."[9] Black's Law Dictionary 935 (11th ed. 2019). Further, "inhabitant" is defined as "[o]ne that inhabits a place, especially as a permanent resident[.]" The American Heritage Dictionary of the English Language 902-03 (5th ed. 2011). However, we find no fault with the hearing justice's conclusion that, in the charter, "inhabitants" has a far more expansive meaning than the literal definition and means anyone who owns real estate and pays taxes to the district. *See Chang v. University of Rhode Island*, 118 R.I. 631, 643, 375 A.2d 925, 931 (1977) (holding that the court is not required to have tunnel vision when interpreting a statute; in fact, "every word, clause and sentence of a statute must be given effect if possible").

As noted *supra*, Section 5 of the charter states that PWFD may consider "the number or average number of persons residing or working in or otherwise connected therewith[.]" The use of the word "working" clearly contemplates a business, which would not fit within the literal definition of "inhabitant." Section 5 also references that the "owner[s] of any house, building, tenement or estate shall be liable for the payment of the water rates[.]" The use of the word "house" implies a residence, but Section 5 also references a "building, tenement or estate[,]" which all have a much

---

[9] The American Heritage Dictionary of the English Language 902 (5th ed. 2011) defines "inhabit" as "[t]o live or reside in[.]"

-14-

broader meaning than the inhabitants of a house. We agree with the hearing justice that the use of the word "inhabitants" within Section 5 is not intended to be applied based upon the literal definition of the word urged by PWFD. Therefore, a broader interpretation of the term "inhabitants" to include all owners of real estate who pay taxes to PWFD is necessary to carry out the intent of the charter.

This conclusion, endorsing a broader definition of "inhabitants," is also consistent with other sections of PWFD's charter. Section 5A, for example, is entitled "Mandatory Connection" and provides that "[t]he administrative board may by resolution order the owner of any estate abutting any portion of any street or highway in which any main constituting part of the district's water system is situated to connect the water-using facilities on said estate with such main." It would be inconsistent to hold that PWFD is only required to provide water based upon the literal definition of inhabitant despite having the power and authority to mandate that "any estate" connect to an abutting main. In this Court's opinion, such an interpretation would be clearly contrary to the purpose of the charter.

Additionally, PWFD's assertion that the Superior Court should have deferred to its interpretation of the charter is of no moment. "We have generally followed the principle that, if a statute's requirements 'are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference as long as that construction is not

-15-

clearly erroneous or unauthorized.'" *Grasso v. Raimondo*, 177 A.3d 482, 486-87 (R.I. 2018) (quoting *State v. Swindell*, 895 A.2d 100, 105 (R.I. 2006)). "However * * * we do not owe any 'administrative agency's interpretation blind obeisance; rather, the true measure of a court's willingness to defer to an agency's interpretation of a statute depends, in the last analysis, on the persuasiveness of the interpretation, given all the attendant circumstances.'" *Id.* at 487 (quoting *Mancini v. City of Providence*, 155 A.3d 159, 168 (R.I. 2017)).

Finally, and perhaps most importantly, contrary to PWFD's argument, the broader definition of inhabitants is consistent with Section 10 of the charter. As PWFD admitted in its answer, it is a quasi-municipal agency created for the purpose of obtaining and maintaining a supply of water for the extinguishing of fire for the inhabitants of Portsmouth. It also acknowledged that it taxes lots in Portsmouth for the extinguishing of fire pursuant to Section 10. Furthermore, Section 10 of the charter, entitled "Authority To Tax," gives the district the power to order, assess, and collect taxes on ratable real estate for purposes of maintaining a supply of water and paying its expenses. However, Section 10 does not distinguish between the uses for which PWFD taxes property—"for the extinguishing of fire, power, domestic and other uses[.]"

The owners of any real estate in Portsmouth within PWFD's district must pay taxes to PWFD, as well as separate real estate taxes to the Town of Portsmouth.

-16-

These taxes are in addition to rates paid to PWFD on any water usage. The taxes payable to PWFD are based on the tax-assessed value of the ratable real estate located in the district and ratable tangible personal property.

Again, it would be incongruent if the district can collect taxes on all real estate but is required to provide water only to people who actually "inhabit" the district. *See Grasso*, 177 A.3d at 490 ("Wherever possible, a statute is to be construed in a way which will render it reasonable, fair and harmonious with its manifest purpose, and which will conform with the spirit of the act.") (quoting *Los Angeles County v. Frisbie*, 122 P.2d 526, 532 (Cal. 1942)). As the hearing justice opined, if the literal meaning of "inhabitant" were adopted, then PWFD would not have to provide water to businesses or farmland that have no residential component but could still collect taxes from those properties.

PWFD's interpretation of its charter as requiring it to provide water service within the Town of Portsmouth only where at least a portion of a building receiving that water service lies within the district would lead to an absurd result. For example, it would mean that PWFD would not have to provide water to businesses such as golf courses or farms that have no residential component or buildings, despite the district's ability to collect taxes from those businesses. Therefore, we are of the opinion that the hearing justice did not err when he found that the charter established an inextricable link between taxation and services. The charter makes sense only if

-17-

the power to tax is linked to the right to receive services. The power to tax as found in Section 10 is broad and has no limitation as to the type of property that is subject to taxation.[10] Section 10 also does not require a certain amount of taxes to be paid in order to trigger the receipt of water services. We are unpersuaded, as the hearing justice was, by the contention that Middle Creek Farm is required to pay a substantial amount of taxes to receive service.

Therefore, we conclude that the hearing justice did not err in concluding that sub-lots 1, 2, and 4 were entitled to connect to the water main because each lot has taxable property within the confines of the district.

## Failure to Join Indispensable Parties

PWFD additionally argues that the hearing justice erred when he denied PWFD's motion to dismiss for failure to join indispensable parties. General Laws 1956 § 9-30-11 provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the

---

[10] We also find unavailing PWFD's argument that, pursuant to § 46-15-2 (set out in pertinent part *supra* at footnote 4), it is prohibited from providing water service beyond the boundaries of its water district without approval from various state agencies. Regardless of the parties' arguments concerning the proper application of § 46-15-2, this Court has already determined that, based upon the language of the charter, PWFD will not be wrongfully supplying water to sub-lots 1, 2, and 4 because each sub-lot contains taxable property within the confines of the district. This alone precludes the application of § 46-15-2 to deny water to sub-lots 1, 2, and 4.

-18-

proceeding." In a declaratory-judgment action, "[o]rdinarily failure to join all persons who have an interest that would be affected by the declaration is fatal." *Rosano v. Mortgage Electronic Registration Systems, Inc.*, 91 A.3d 336, 339 (R.I. 2014) (quoting *Burns v. Moorland Farm Condominium Association*, 86 A.3d 354, 358 (R.I. 2014)).

Rule 19 of the Superior Court Rules of Civil Procedure requires the joining of indispensable parties. *See Rosano*, 91 A.3d at 339-40. "This Court has defined 'an indispensable party as one whose interests could not be excluded from the terms or consequences of the judgment as where the interests of the absent party are inextricably tied in to the cause or where the relief really is sought against the absent party alone.'" *Id.* at 340 (deletions omitted) (quoting *Root v. Providence Water Supply Board*, 850 A.2d 94, 100 (R.I. 2004)). "A court may not assume subject-matter jurisdiction over a declaratory-judgment action when a plaintiff fails to join all those necessary and indispensable parties who have an actual and essential interest that would be affected by the declaration." *Id.* (quoting *Meyer v. City of Newport*, 844 A.2d 148, 152 (R.I. 2004)).

In the case at bar, none of the owners of the other fifty-three properties have a direct claim upon the subject of the action such that joinder of that party will cause it to lose anything by operation of the judgment rendered. PWFD has failed to establish that any of the properties have "an actual, present, adverse, and antagonistic

-19-

interest" in the judgment. *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1037 (R.I. 2017) (quoting 22A Am. Jur. 2d *Declaratory Judgments* § 204 at 859 (2013)). PWFD argues that it will have to litigate the underlying issue—whether or not PWFD is required to provide water services to the properties—every time a property straddling the Portsmouth-Middletown line files an application for water service. However, we agree with the hearing justice that this argument is purely speculative, and an unsubstantiated or speculative risk is insufficient and will not satisfy the § 9-30-11 criteria. Therefore, we conclude that PWFD has failed to establish that the hearing justice erred when he determined that the owners of the fifty-three properties should not be joined under § 9-30-11, because no demonstration has been made that the parties "claim any interest which would be affected by the [court's] declaration," or that the declaration would "prejudice the rights of [the fifty-three property owners] not parties to the proceeding." Section 9-30-11.

## Conclusion

For the reasons set forth herein, we affirm the judgment of the Superior Court. The papers may be remanded to the Superior Court.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Middle Creek Farm, LLC, et al. v. Portsmouth Water & Fire District et al. |
| **Case Number** | No. 2019-95-Appeal.<br>(NC 16-231) |
| **Date Opinion Filed** | June 16, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Newport County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian Van Couyghen |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Neil P. Galvin, Esq.<br>Girard A. Galvin, Esq.<br>Aivi Nguyen, Esq. |
| | For Defendant:<br><br>Adam M. Ramos, Esq.<br>Christine E. Dieter, Esq. |